### UNITED STATES v. CHICAGO, M. & P. S. RY. CO.

(District Court, D. Idaho, N. D.   June 16, 1914.)

#### No. 443.

COMMERCE (§ 27*)—RAILROADS—HOURS OF SERVICE LAW—"EMPLOYÉ."

The Hours of Service Act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, §§ 8677–8680]), which provides that it shall apply to any common carrier or carriers, their officers, agents, and employés, engaged in the transportation of passengers or property by railroad from one state to another, and that "employés," as used therein, means persons actually engaged in or connected with the movement of any train, did not apply to the engineer of a work train operated wholly within one state, though upon a line of railroad constituting a part of the company's through highway of interstate commerce, and though the train was engaged in hauling materials for the repair of the track over which interstate trains ran.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*

For other definitions, see Words and Phrases, First and Second Series, Employé.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Civil action by the United States against the Chicago, Milwaukee & Puget Sound Railway Company. On demurrer to the amended complaint. Demurrer sustained.

J. L. McClear, U. S. Atty., of Cœur d'Alene, Idaho, J. R. Smead, Asst. U. S. Atty., of Boise, Idaho, and Walter N. Brown, Sp. Asst. U. S. Atty.

Geo. W. Korte, of Seattle, Wash., for defendant.

DIETRICH, District Judge. The amended complaint contains two causes of action substantially alike. In each the defendant is charged with the violation of what is commonly known as the "Hours of Service Act." 34 Stat. 1415. Reference to the first count will suffice.

The specific charge is that on or about October 31, 1912, the defendant permitted one J. H. Crown, a locomotive engineer upon one of its work trains, to remain on duty for a longer period than 16 consecutive hours. The work train was being operated between Karnar and Pedee, both in the state of Idaho, upon a line of the defendant's railroad constituting a through highway of interstate commerce, and was being used for hauling dirt or earth to fill certain bridges. It is expressly alleged that Crown "was solely engaged in and connected with the movement" of this work train, and that the train was "solely engaged in hauling" dirt, as already explained. It is further alleged that the defendant was a common carrier engaged in interstate commerce by railroad in the state of Idaho. By the demurrer the defendant challenges the sufficiency of the facts alleged to constitute a cause of action.

The question submitted is whether an employé upon a railroad "work train" operated wholly within one state, by a railroad corporation engaged in interstate commerce, upon a line of railroad constituting a part of the company's through highway of interstate commerce, falls within the provisions of the act referred to. The act has received an authoritative construction in Baltimore & Ohio Railway Co. v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878, which it is thought requires the question to be answered in the negative. Much of the argument submitted by the government pertains to the power of Congress in the premises and the effect of the adoption of the defendant's view upon the comprehensiveness of the act. The power of Congress to extend the regulation to employés upon intrastate trains having no direct relation to interstate transportation, and the cogency of the reasons advanced why such extension should be made, may be admitted; but the ultimate question is, not what legislation is possible or desirable, but what we actually have. By the first section thereof the act is made to apply "to any common carrier or carriers, their officers, agents, and employés, engaged in the transportation of passengers or property by railroad" from one state to another; and the term "employés" as used is declared "to mean persons actually engaged in or connected with the movement of any train." In the Baltimore & Ohio Case it was urged by the railroad company that the act was unconstitutional, because, as was said:

"Its prohibitions and penalties are not limited to interstate commerce, but apply to intrastate railroads and to employés engaged in local business."

But this contention was rejected by the court, under the view that only employés "who are connected with the movement of trains in interstate transportation" are comprehended within the terms of the act. It was held that the term "employés" is qualified by the clause, "engaged in the transportation of passengers" from one state to another, as well as by the clause, "engaged in or connected with the movement of any train." Following the quotation of section 1 in full, it was said:

"No difficulty arises in the construction of this language. The first sentence states the application to carriers and employés who are 'engaged in the transportation of passengers or property by railroad' in the District of Columbia or the territories, or in interstate or foreign commerce. The definition, in the second sentence, of what the terms 'railroad' and 'employés' shall include, qualify these words as previously used, but do not remove the limitation as to the nature of the transportation in which the employés must be engaged in order to come within the provisions of the statute."

Again it was said:

"The statute, therefore, in its scope, is materially different from Act June 11, 1906, c. 3073, 34 Stat. 232, which was before this court in the Employers' Liability Cases, 207 U. S. 463 [28 Sup. Ct. 141, 52 L. Ed. 297]. There, while the carriers described were those engaged in the commerce subject to the regulating power of Congress, it appeared that if a carrier was so engaged the act governed its relation to every employé, although the employment of the latter might have nothing whatever to do with interstate commerce. In the present statute, the limiting words govern the employés as well as the carriers. But the argument, undoubtedly, involves the consideration that the interstate and intrastate operations of interstate carriers are so interwoven that it is utterly impracticable for them to divide their employés in such manner that the duties of those who are engaged in connection with interstate commerce shall be confined to that commerce exclusively. And thus many employés who have to do with the movement of trains in interstate transportation are, by virtue of practical necessity, also employed in intrastate transportation. This consideration, however, lends no support to the contention that the statute is invalid. * * * The fundamental question here is whether a restriction upon the hours of labor of employés who are connected with the movement of trains in interstate transportation is comprehended within this sphere of authorized legislation."

But it is further urged that if the statute cannot be construed so broadly as to include every employé engaged in or connected with the movement of any train, and that if its provisions apply only to those employés who are engaged in or connected with the movements of trains in interstate commerce, still an engineer employed as was this one, falls within the prohibitions of the statute, because, as is said: (1) He is actually engaged in and connected with the movement of trains in interstate commerce, and is an employé actually engaged in interstate commerce; and (2), he is an employé who is regularly and generally engaged in and connected with the movement of trains in interstate commerce.

In support of the first proposition, it is argued that inasmuch as the work train passed over a portion of an interstate highway, and carried materials for the repair thereof, the engineer was necessarily

connected with the movement of interstate trains. The reasoning is rather tenuous and wholly ignores the fact that the clause "engaged in the transportation of passengers," etc., qualifies the word "employés" as well as the word "carriers.". It must be apparent that, if the train crew upon this work train was "connected" with the movement of interstate trains, it would be quite impossible to imagine a trainman upon any train, running upon any part of an interstate road, who is not in some way connected with the movement of interstate trains. No reason is conceivable why Congress would include a local work train and exclude a local passenger or freight train. That being the case, the clause "engaged in the transportation," etc., as qualifying the term "employé," is wholly redundant, for, if we adopt the government's theory, the act applies to any trainman upon an interstate railroad, regardless of the question whether or not the train to which his duties pertain crosses the state line or carries passengers or freight in interstate commerce. And it is to be added that if an engineer is "connected" with the movement of trains in interstate commerce, by the fact merely that his work train is supplying material for the repair of the track over which such interstate trains run, then surely the men who put such material in place, and indeed all workmen having to do with the construction and maintenance of the roadbed and bridges, including sectionmen, are so "connected," for in a measure the duties of all such employés relate to the safe movement of interstate trains. And in that view the clause "actually engaged in or connected with the movement of any train" becomes meaningless, for the act would comprehend all persons having any connection, direct or indirect, with the movement of persons or property in interstate transportation, regardless of the question whether, according to the common understanding, their duties relate to the movement of interstate trains. Some reference is made to the decisions under the Safety Appliance Act (Comp. St. 1913, §§ 8605–8612) and the Employers' Liability Act (Comp. St. 1913, §§ 8657–8665), but the language of neither of these acts is closely analogous.

As to the second proposition, it is only necessary to say that it assumes conditions which are not shown to have any existence in fact. We are not at liberty to presume that the defendant ever employed Crown in any capacity other than as an engineer of the work train, or that the work train was, ever used outside of the state of Idaho. Hence the abstract legal question involved in the proposition need not be discussed.

For the reasons stated, an order will be entered sustaining the demurrer.