### UNITED STATES v. CHICAGO, M. & P. S. RY. CO.

(District Court, D. Idaho, N. D.   December 15, 1914.)

No. 443.

MASTER AND SERVANT ⊂⟶13—HOURS OF SERVICE LAW—INTRASTATE COMMERCE.
  Where an engineer who had previously been engaged in interstate commerce was assigned to duty on an engine hauling a work train engaged in filling a bridge on defendant's interstate line and he was wholly engaged in such service for 59 days, during which he was permitted to remain on duty continuously for more than 16 hours, the railway company was not thereby guilty of violating the Hours of Service Law (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, §§ 8677–8680]), though he was subject to recall for interstate service during such period and at the end thereof was reassigned to interstate commerce.
  [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⊂⟶13.]

At Law. Action by the United States against the Chicago, Milwaukee & Puget Sound Railway Company.  Judgment for defendant.  Dismissed.

James L. McClear, U. S. Atty., of Cœur d'Alene, Idaho, J. R. Smead, Asst. U. S. Atty., of Boise, Idaho, and Otis B. Kent, Sp. Asst. U. S. Atty., of Washington, D. C.

George W. Korte, of Seattle, Wash., for defendant.

DIETRICH, District Judge.   In the opinion on demurrer filed herein on June 16, 1914 (218 Fed. 701), certain questions were disposed of; but the point made by the government that Crown, the locomotive engineer, came within the provisions of the Hours of Service Act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, §§ 8677–8680]), because, while temporarily employed in intrastate work, he was generally engaged in the movement of trains in interstate commerce, was passed with the suggestion that the facts were insufficient to warrant its consideration.   Subsequently the complaint was amended to exhibit these facts, and the defendant answered, and thereupon a written stipulation of facts was filed.   The cause is now submitted upon the pleadings and this stipulation.

Touching the point referred to, it is stipulated that:

Prior to September 12, 1912, Crown "was generally and regularly engaged in or connected with the movement of defendant's trains in the moving of interstate commerce; that on said date of September 12, 1912, the said J. H. Crown was assigned to regular work-train service, being in charge of defendant's locomotive engine No. 1416, pulling an extra work train of the defendant, known as 'work extra No. 1416,' said train being then and

there operated between Karnac in the state of Idaho and Pedee in said state, and being then and there engaged solely in the work of hauling dirt or earth to be used in filling of certain bridges on said defendant's line of railroad between said stations, which said line of railroad was then and there a part of the defendant's through highway of interstate commerce; that he thereafter continued exclusively in charge of said engine, hauling said work train exclusively engaged in hauling dirt as aforesaid, until November 10, 1912, a period of about 59 days continuous and uninterrupted service, when he was reassigned to the service of said defendant, wherein he was engaged in or connected with the movement of defendant's trains engaged in interstate commerce; that during said period of 59 days, and on each of said days, the said J. H. Crown was potentially subject to recall from work-train service to regular interstate service, or to any other service in which said defendant company might have had occasion to use the said J. H. Crown as a locomotive engineer."

It is further stipulated that during the 59-day period, namely, on October 31, 1912, Crown was permitted to remain on duty in such work-train service continuously for more than 16 hours.

As is not infrequently true of such stipulations, some of the phraseology here employed suggests a reluctance upon one side or the other to look upon the naked facts. Circumlocutions and euphemisms may obscure, but they do not alter, the realities, and after all it is the realities alone with which we are concerned. Now when analyzed, the stipulation means nothing more, as I understand it, than that at one time Crown was regularly employed by the defendant in moving interstate commerce; that thereafter for a period of 59 days he was regularly employed in operating a work train, wholly within the state of Idaho, for the purpose of filling (not repairing) a bridge upon a line of road which was a part of an interstate highway; that thereafter he again went back into interstate commerce service. The phrase that, "Crown was potentialy subject to recall," is without substance, meaning only that if at any time the defendant had need of and desired to use his services in moving interstate commerce, and if at such time he was willing to render such service, the defendant would so employ him. While perhaps not of great importance, there is no intimation even that at any time during the 59 days the defendant had any purpose or expectation of re-employing him, in, or assigning him to, the movement of interstate trains, or that he had any expectation or intention of going back into such service. He was "potentially subject" to be called into such service in the sense only that any other locomotive engineer, whether in the employ of the defendant or not, was subject to be called into its service. As expressly stated in the stipulation, he might be called into that service or he might be called into some other service for the defendant; or, presumably, he might be discharged from or quit the employment of the defendant entirely. Such being the situation, I have no hesitation in holding that the fact that he had been engaged in the movement of interstate commerce and subsequently resumed that kind of service is without legal significance.

Assuming a close analogy between the statute under consideration and the Safety Appliance Act, counsel for the government rely largely upon certain decisions construing the latter act. It is true that there is an analogy between the two acts in some respects and from certain viewpoints; but because in some of their features there is a similarity,

and therefore because decisions construing certain features of the one may be taken as authority for the construction to be placed upon corresponding and similar features of the other, it does not follow that decisions construing other provisions of the one are to be taken as authority touching the interpretation to be given to corresponding but wholly dissimilar features of the other. When, in United States v. Kansas City Southern Ry. Co., 202 Fed. 828, 121 C. C. A. 136, the court spoke of the Safety Appliance Act as "a closely analogous statute," it was considering the general purpose of the act and the nature of an action brought to recover the penalty, and the pleadings and procedure in such action. So in United States v. St. Louis S. W. Ry. Co. (D. C.) 189 Fed. 954, the court was considering only the penal character of the action. In neither is there any intimation that the acts are analogous in respect to the subject we are here considering. It is pointed out in Southern Ry. Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72, that the Safety Appliance Act was made to "apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce * * * and to all other locomotives, tenders, cars, and similar vehicles used in connection therewith." Perhaps Congress might have made the Hours of Service Act comprehend, but plainly it did not make it comprehend, all persons employed by a railroad company "engaged in interstate commerce." It expressly restricted its application to certain classes of persons, rendering certain specified services.

Counsel for the government quote from Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, as follows:

"Confessedly this dining car was under the control of Congress while in the act of making its interstate journey, and in our judgment it was equally so while waiting for the train to be made up for the next trip. It was being regularly used in the movement of interstate traffic, and so within the law."

And to make the application of the passage to the present case, they paraphrase as follows:

"Confessedly this engineer was under the control of Congress while in the act of making his interstate journeys, and in our judgment he was equally so when waiting to be called for his next (interstate) trip. He was regularly engaged in interstate traffic, and so within the law."

But the difficulty about the paraphrase is that it is aside from the facts. Crown was not, on the 31st day of October, waiting to be called for an interstate trip. So far as appears, the defendant never expected to call him, and he never expected to be called, on an interstate trip. Whether he would ever go upon such a trip depended upon several contingencies. Suppose that in the Johnson Case the facts had been that the dining car in question had once been used in interstate commerce, but that it had been set aside for an indefinite period for intrastate service, and had been used exclusively for such service for several weeks, and was at the time its condition was called into question, being so used, and was waiting for an intrastate, not interstate, train to be made up, to which it was to be attached, and that there was no

present intention of withdrawing it from intrastate service. Surely both the reasoning and the conclusion must have been different.

This is not a case where there was a commingling of service, where the employé was one hour or one day operating in interstate and another hour or another day operating in intrastate commerce; nor is it a case where, though not in a literal sense actually engaged in moving an interstate train, the employé "stands and waits" to actually engage in such service. If the contention of the government is correct, an employé who has once rendered service such as is covered by the act must always be deemed to be within the provisions thereof, regardless of the time which has elapsed since he ceased to render such service, at least so long as he remains in the employ of the same company.

In view of these considerations, it is thought that no cause of action has been disclosed, and a judgment of dismissal will be entered.