## NEW ORLEANS & N. E. R. CO. *v.* BEARD.

[90 South. 727, No. 22344.]

COMMERCE. *Where locomotive was bought and being repaired for "inter-state commerce," injury to servant working thereon governed by state and not federal law.*

Where a servant was injured by the negligence of his master while repairing a locomotive, which had been dismantled and undergoing general repairs, and which was out of service several weeks before and after the injury, and where other locomotives were engaged in the actual work for which the locomotive being repaired was bought and used, the liability for the injury is governed by state law, and not by the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), even though such locomotive was intended to be used solely in interstate commerce when used by the master.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Suit by Thomas E. Beard against the New Orleans & Northeastern Railroad Company for personal injuries. Judgment for plaintiff, and defendant appeals. Affirmed.

*Bozeman & Cameron,* for appellant.

This question confronts us: "Is an engine which is assigned exclusively to interstate commerce an instrumentality in such commerce even though it is withdrawn from actual transportation service for a period of several months, and is dismantled and shopped for heavy repairs?

In seeking an answer to this question one's mind naturally turns to the decision of the United States supreme court in the case of *Minneapolis & St. Louis Railroad Company* v. *Winters,* 242 U. S. 353, 61 L. Ed. 358, which was decided January 8, 1917. Prior to this decision and following the decision of the Federal supreme court in the Pederson case (*Pederson.* v. *Delaware, Lackawana & Western Railroad Company,* 229 U. S. 146, 57 L. Ed. 1125), decided May 26,

1913, courts of the country had generally held that any employee of a railroad company, injured while performing any work connected, however remotely, with an instrumentality engaged in commerce, both interstate and intrastate, came within the Federal Act. The decision in the Winters case overturned a number of these decisions and drew a definite line of demarcation, with respect to employees working in shops at terminal points, between those who come within the purview of the act and those who do not. Unless, the facts in the present case can be differentiated from those which formed the basis of the decision in the Winters case the action of the lower court will have to be affirmed in so far as the present point is concerned. If there is an essential point of difference the error of the lower court in following the Winters case will be apparent.

In the Winters case an employee was injured while working on an engine which had been put in the shops for repairs. This engine had been used, prior to being shopped, in both interstate and intrastate commerce, and was so used after the plaintiff's injury. It was contended that this brought the employee working on the engine within the Federal act; in other words, that the indiscriminate use of the engine in interstate and intrastate commerce before and after the employee's injury determined the character of the engine while it then was being worked upon.

The supreme court of the United States held against this contention, stating as a basis for this holding that an engine as such is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as might be needed for  .  .  .  its next work so far as appears might be confined to Iowa or it might be interstate, as it should happen; at the moment, it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time not upon remote probabilities or upon accidental later events.

It will readily be seen that the very language used by the court is the basis for its decisions in that case dis-

tinguishes it from the case before us; here the engine was destined especially to anything more definite than the business that it might be needed for; it was destined specifically to the work of pulling a freight train from Meridian, Mississippi, to New Orleans, Louisiana, and return. Its next work could not possibly be confined to the state of Mississippi, or any other state; its next work, as then definitely appeared, was in interstate commerce. Its "character as an instrument of commerce, did not depend upon remote probabilities or upon accidental later events." Its character was fixed by its employment at the time, which employment was the process of rehabilitation for a definite fixed work.

The courts and text-writers find it helpful to consider, together the Winters and the Pederson cases with a view of determining the difference in legal principle, which lay at the foundation of these decisions. To the minds of some there is a conflict between the two decisions, but a close study of them will disclose that this is more apparent than real.

In the Pederson case the injured employee was engaged in carrying some bolts to a bridge which was being repaired. This bridge was part of a line of railroad over which trains of both character passed. The court held that Pederson was an employee engaged in interstate commerce at the time of his injury. Among the questions which arose to the mind of the court in that case were these: "Was the work (in which plaintiff was engaged) being done independently of the interstate commerce, in which the defendant was then engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? To the court the answers to the questions were obvious. Tracks and bridges are as indispensible to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be

kept in repair. The security, expedition and efficiency of the commerce depends in a large measure upon this being done . . . We are of the opinion that the work of keeping such instrumentalities in proper repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it."

This quotation from the two cases will point to the differentiating factors in the two cases which become clearer upon reading the entire opinions. Briefly stated they are these: In the Pederson case the bridge had a definite character at the time of plaintiff's injury. It was at that very moment dedicated to interstate commerce. In the Winters case the engine at the time of plaintiff's injury had no definite character at all. It had no assignment. It had not been dedicated to any work, and its character at that immediate time could not be determined by accidental later events.

The language of Hon. M. G. Roberts in his work on the Federal Liabilities of Carriers, Vol. 1, par. 490, page 847, is quite illuminative. A comparison of the ruling of the National supreme court in the Winters case and the doctrine of that court as announced in the Pederson case, well illustrates the demarcation between interstate and intrastate employment. The distinction made in holding that Winters was not engaged in interstate commerce when repairing an engine which had been pulling interstate trains and which was afterwards used for the same purpose, and that Pederson while carrying a bolt to repair a railroad bridge was employed in interstate commerce seems at first blush elusive and subtle, but there are nevertheless sound differentiating factors between the two cases. They are both close to the border line of state and federal jurisdiction. The bridge composing a part of the line of an interstate railroad is an instrumentality which necessarily is permanently devoted and assigned to interstate transportation, and hence the work of repairing such a structure constitutes employment under Federal control; however, the engine while being repaired by Winters was not then used

in interstate commerce but was idle in the shops, and, what is more to the point, had not been so assigned to interstate transportation at the time of the injury so that the employee in repairing it could not be said, to be engaged in interstate commerce.

However, Roberts unhesitatingly says that if the engine on which Winters was working had been definitely assigned to interstate commerce at the time of his injury he would have been held to engaged in interstate commerce. Quoting further from the paragraph above cited: "The engine was used in both kinds of commerce and not definitely assigned or devoted to either, though it so happened that it pulled an interstate train on its last trip and was thereafter used in like employment. Had this engine been definitely assigned to pulling interstate trains Winters would have been engaged in Federal commerce, within the doctrine of the Pederson case. The engine would then have been used in interstate commerce as much so as the dining car in *Johnson* v. *Southern Pacific Co.*, (196 U. S. 1, 49 L. Ed. 363). See also to the same effect pages 836-7 of the same volume of Roberts with the exception of employees repairing cars and engines devoted and assigned exclusively to interstate traffic, servants of common carriers, working in such places as round houses, repair shops, etc., . . . are not governed by Federal statute . . ." Likewise on page 849 of the same work, is the following: "Notwithstanding the limitation placed upon the interstate *status* of car and engine repairers in the decision of the National supreme court in the Winters case, employees engaged in the repair of cars used solely in interstate commerce are governed by the Federal Act and not by state laws." An employee while working in the roundhouse in repairing an engine used exclusively in hauling interstate passenger trains between Caliente, Nevada, and Milford, Utah, was engaged in interstate commerce within the meaning of the Federal Act." See also pages 850-51 of the same work: "An employee painting engines or cars used in interstate commerce is not under the Federal statute

unless these cars are exclusively devoted and assigned to interstate commerce.  .  .  .   It did not appear from the facts in the Branson case that the engines and cars were exclusively devoted and assigned to interstate commerce while being painted in the terminal yards between trips; however had the proof disclosed that the engines and cars had been so exclusively devoted and assigned to interstate commerce, no doubt the court would have held that the employee while painting them was engaged in interstate commerce."

So Mr. Henry P. Farnham, one of the managing editors of the American Law Reports, who prepared the admirable and exhaustive note found in the tenth volume of this work, pages 1184, *et seq.,* expresses without reserve the same idea; thus work on an engine employed in interstate commerce up to the time it is taken to the shop for overhauling and destined to be returned thereto when the repairs are completed is interstate commerce.

It would seem therefore that reason and Messrs. Farnham and Roberts are on the side of the proposition that when an instrumentality is definitely and exclusively assigned to interstate commerce, an employee while working on such an instrumentality, is governed in his recovery by the Federal statute.   Measured by the standard of this proposition, the engine in the present case was an instrumentality in interstate commerce and plaintiff was governed in his right to recover by the federal law.

We have found after most careful search only three decisions of other courts involving the points before us which have been rendered since the decision in the Winters case. We have found one or two others decided before the Winters case which are not affected by the decision in the Winters case. *Law* v. *Illinois Central Railroad Company,* 208 Fed. 869, 126 C. C. A. 27, L .R. A. 1915C, 17; 223 U. S. 5, 56 L. Ed. 329; *Chicago K. & S. Railway Co.* v. *Kindlesparker,* 234 Fed. 1, 148 C. C. A. 17.

The only case in point which we have been able to find decided by a Federal court since the decision in the Winters case is that of the *Atlantic Coast Line Railroad Co.* v. *Woods,* 252 Fed. 428, 164 C. C. A. 352, decided May 7, 1918. We invite the court's attention to both the majority opinion and the dissenting opinion in that case. The court there considered the Winters case and drew the very line of distinction between the two that we are urging, viz: That in the Winters case the instrumentality on which the employee was injured had no definite assignment to interstate commerce at the time of the injury; in the case at bar the engine at the very time of plaintiff's injury had an exclusive assignment to interstate commerce.

There are two decisions of state courts rendered since the Winters case which are in point. They are *Smiegel* v. *Railroad Company,* 160 N. W. 1057, and *Kuckenmiester* v. *Railroad Company,* 172 Pac. 725. We see no possible way in which the facts in the case before the court can be distinguished from those in the cases above discussed, particularly the Law and Kuchenmeister cases. The principal announced in those cases comports entirely with that set forth in Roberts, in his admirable work, and that sustained entirely by reason. The case before us is stronger with reference to engaging in interstate commerce, than any of those we have cited. Here we have a man engaged in making repairs on an instrumentality which as far as the testimony goes, had no character whatever except an interstate one. In the course of these repairs, every bolt which was placed, every joint which was riveted, every flue which was welded, everything that was done, was done with the sole end in view of fitting this engine, No. 6911, to take up its regular run between Meridian, and New Orleans and return, so that one of its sister engines might be taken off of the road and given a similar rehabilitation. We submit, therefore, with every confidence that Beard, at the time of his injuries was engaged in interstate commerce and that his case was governed by the Federal Act and that the court below erred in refusing to so hold.

*J. W. Cassedy* and *Currie & Currie*, for appellee.

After the United States supreme court had declared unconstitutional the Act of 1906, Congress passed the Act of April 22, 1908, which provided, so far as the question under consideration is concerned, that every common carrier by railroad, while engaged in commerce between states, territories, or with foreign counties, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce. Under this statute, therefore, the railroad and the employee must be engaged in interstate commerce at the time of the injury.

The language of the statute is plain, but the courts have had some difficulty in determining just when an employee was engaged in such commerce. There was a tendency to give a very liberal construction to the act after the decision in the Pedersen case. But, there is a like tendency to construe strictly the act since the decision in the Winters case. The Pedersen case was decided May 26, 1912, and the Winters case was decided January 8, 1917.

The Pedersen case and the Winters case, conceded by counsel for the appellant to be and they are landmark cases, both establish a principle of law under which it can never be said that the appellee in this case was engaged at the time of his injury in interstate commerce. In the Pedersen case the work in which he was engaged at the time of his injuries, had to do with the maintenance of the railroad track itself, and in the Winters case, the work in which he was engaged at the time of his injuries was that of repairing an engine in the shops. Pedersen was engaged at the time of his injury in act of labor repairing the track which was a fixed instrumentality of interstate commerce; the track, upon which the transportation of commerce depended, at every moment and in every movement; the track, without which there could be no transportation. The first step toward railroad transportation is the acquisition of the right of way for the track, then the building of the track, and then the maintenance of the

track. The track is the very backbone and life of the trade. It is fixed and permanent, and must be so. Every movement requires that the track be properly maintained.

Any obstruction or destruction of the track necessarily obstructs delays and hinders commerce. It was upon this theory that the court held Pederson to be engaged in an act of interstate commerce when he was injured while carrying bolts to the bridge to be used in making necessary repairs; without the bridge there was no track, and without the track there could be no transportation.

There is in reason as well as law a vast distinction between the tracks, which is essential, and indispensable to any and every act of transportation, and an engine, car or train, which runs on the track, and the courts and the law have recognized the plain distinction. The track as such can never be dissociated from the commerce which is transported over it or which it is designed, while a particular engine, car or train may have to do with either or both sorts of commerce at the same time or at different times, or may be withdrawn from such commerce altogether without in the least interrupting, hindering or delaying the same.

The court will bear in mind that the proof in the case at bar shows conclusively that the withdrawal of the engine, upon the boiler of which the appellee was working at the time of his injuries did not in the least interrupt, hinder, delay or obstruct the commerce, but it all moved forward on schedule time, drawn by other engines.

In the Perez case the court, speaking of the cases cited as holding a contrary view to that expressed by the court said: "In every one of them the work being done at the time of the injuries was either work directly in interstate commerce or so closely connected with it as to be practically a part of it, and this, in all cases, seems to be the crucial test." Crucial test—Practically a part of it—This language means, to all intents and purposes the same thing and it puts completely out of the statute the case of the appellee against the appellant.

The proof is absolute that there was not the slightest interruption, hindrance or delay of transportation during this whole period, and it is plain that the work in which the appellee was engaged at the time in repairing the boiler was entirely too remote to come within any definition bringing the act within the Federal statute.

To show the other side of the illustration we cite the case of *Philadelphia B. & W. Railroad Company* v. *McConnell*, 228 Fed. Rep., 263.  In the case of *Chicago, Burlington & Quincy R. R. Co.* v. *Harrington*, 241 U. S. 177, the court held: "Unless the injured employee of an interstate and intrastate carrier is engaged in interstate commerce at the time of the injury, the Federal Employer's Liability Act does not apply and it is immaterial whether such employee had previously been or in the immediate future was to be engaged therein."  The same applies to the boiler in this case. The boiler was not engaged in commerce of any sort at the time.

In the case of *Shanks* v. *Delaware, Lackawanna and Western R. R. Co.*, 239 U. S. 556, the court held: "Thus it is essential to a right of recovery under the act not only that the carrier be engaged in interstate commerce at the time of the injury but also that the person suffering the injury be then employed by the carrier in such commerce."

And the court further said: "And so it results where the carrier is also engaged in interstate commerce, or in what is not commerce at all, that one who, while employed therein by the carrier, suffers injury through its negligence, or that of some of its officers, agents or employees, must look for redress to the law of the state wherein the injury occurs."

Upon the doctrine of these cases we submit that it can never be said that the appellee in this case was engaged at the time of his injury in an act of interstate commerce. *Minneapolis and St. Louis R. R. Co.* v. *Winters*, 242 U. S. 353.

The principle of law announced and established in the Winter case cannot be dissipated or whittled away by

hypocritical criticisms. The fundamental law as announced in the Winters case applied to the case at bar settles the question that the appellee was not engaged in an act of interstate commerce at the time of his injury, or in an act so closely and essentially related to it as to be practically a part of interstate commerce. The truth is that the commerce of the appellant would have gone on, on schedule time if this particular engine and boiler had never gone out of the shop, or had been found upon examination after dismantling, to be in a state of such bad disrepair as to be beyond repair. *Central Railroad Company of New Jersey* v. *Paslick,* 239 Fed. 713; *Chicago, etc., R. R.* v. *Harrington,* 241 U. S. 180, Sup. Ct. 517, 60 L. Ed. 941; *Minneapolis, etc., Co.* v. *Winter,* 242 U. S. 353, 37 Sup. Ct. 170, 61 L. Ed. (No. 420, Oct. term), 1916; *St. Louis, I. M. & S. Ry. Co.* v. *Conley,* 187 Fed. 949; *Southern Railroad Co.* v. *Pitchford,* 253 Fed. 736; *Chicago K. S. Ry. Co.* v. *Kindlesparker,* 234 Fed. 1, 148; *Minneapolis & St. L. R. Co.* v. *Winters,* 242 U. S. 353, 61 L. Ed. 358, 37 Sup. Ct. Rep. 170; *Law* v. *Illinois Central Railroad Company,* 208 Fed. Rep. 869, 126 Cr. Ct. of Appeals, 27 L. R. A. 1915C. 17.

The principle of law announced in the above quotation from the opinion in the law case, was necessarily overruled by the United States supreme court in the Kindlesparker case.

The case of *Johnson* v. *Southern Pac. R. R. Co.,* 223, U. S. —, 56 L. Ed. 329, cited by counsel for appellant in their brief is not in point for the reason that the dining car in that case had not been indefinitely withdrawn from the interstate commerce in which it was engaged, as had the boiler on which the appellee was working at the time of his injury in the case at bar, but the dining car in the Johnson case was dropped out of one train only for a short while because it was running late, to be picked up by another train. But the case of *Johnson* v. *Southern R. R. Co.,* appears to have been cited by the court as an authority in support of its opinion in the Law case, and it could never have been

said that the Johnson case supported the principles announced by the court in the Law case, the principles announced in the Law case having been overruled and reversed, first in the Winters case, and second in the Kindlesparker case; for this reason the Johnson case goes out of consideration as an authority in the case at bar.

In the Smeigel case, cited by counsel in their brief, the facts are that Smeigel was engaged at the time of his injury in making temporary repairs on a car while standing on the tracks, and therefore the case is not in point.

The case of *Kuchenmeister* v. *Los Angelos & S. L. R. R. Co.,* 172 Pac. 725, cited by counsel for appellant, is an opinion of the supreme court of the state of Utah, and the Utah court, in its opinion, cited as the authority, upon which it relied in rendering its opinion, the case of *Law* v. *I. C. R. R. Co.,* 208 Fed. 869, also cited by counsel for the appellant.

' We submit that there is not an opinion of the United States supreme court based upon or growing out of the Federal Employer's Act, under which it can be said that the appellee in this case was engaged at the time of his injury in interstate commerce, and on the contrary it appears, conclusively, under decisions of the United States supreme court, and of other courts following the same, cited in this brief in support of the contention of the appellee, that the appellee was not engaged in an act of interstate commerce at the time of his injury, and in leaving this point we urge that the holding of the lower court was correct and that no error was committed.

Ethridge, J., delivered the opinion of the court.

Beard was plaintiff, and brought suit in the circuit court for personal injuries received while employed as boiler maker, using in the course of his duties an electric welding machine, which was designed and used for welding broken metal, such as boiler flues and the like. It was alleged that he was injured by working inside an engine in the electric welding of the flues of a locomotive. He charged

that it was the duty of the railroad company to furnish him with an incandescent electric light, and that the company negligently failed to furnish him a reasonably safe light, and negligently failed to furnish him a reasonably safe welding machine.

The specific charges of negligence were these: First, that the welding machine was old, defective, and in disrepair, and that it had to be plugged, the effect of which was to carry the full voltage used by the machine at all times through the cable used by the welder; second, that the wire cables were not properly insulated; third, that said cables were permitted to pass over wet ground, by which the wires became "shorted," and that this endangered the life of the workman; and, fourth, that the wire or cable used for the light was also worn and improperly insulated, and that by reason of these defects the current was "shorted," and the plaintiff received a severe shock, knocking him unconscious and inflicting permanent injuries.

The defendant pleaded, first, the general issue; second, contributory negligence; and third, the assumption of the risk. The plaintiff by replication took issue on each of the special pleas. There was a verdict for the plaintiff for fifteen thousand dollars, from which this appeal is prosecuted.

The outstanding legal question involved in this appeal is whether or not the plaintiff was employed at the time of his injury in interstate commerce. The defendant requested the court to so instruct the jury, and that the case was controlled by the federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665), and asked various instructions as to liability, burden of proof, assumption of risk, etc., based on the federal act, all of which were refused by the court.

There are other assignments of error, but we deem it only necessary to notice the question as to whether or not the case is controlled by the federal Employers' Liability Act. The engine in question, which was being repaired by the plaintiff at the time of his injury, was one of five engines

bought by the defendant for use in hauling interstate freight trains from New Orleans to Meridian, and *vice versa*. It required four such engines to be used daily in the moving of such trains. The trains in question at times picked up car lots of freight of a perishable nature, and cars of cattle, where there were two or more cars at a point in Mississippi, to other points in Mississippi; but these cars were placed in the train carrying interstate commerce as above stated. One of the five engines was idle at all times, and the several engines would be alternated as occasion required; there being at all times four locomotives of the kind in question engaged in moving interstate freight, and one of the locomotives undergoing repairs at the company's shops at Meridian, Miss. The locomotive in question at the time of the injury was placed in the shops of the company for a general overhauling and repairs, and had been dismantled, and had been undergoing repairs for several weeks prior to the injury, which occurred on the 21st of August, and the said repairs were not completed until September 8, 1920. The testimony for the defendant showed that the engine or locomotive could have been put in running condition within one week after the injury, and also showed that it was the purpose of the railroad authorities to place it back in service whenever the repairs should be completed.

Was the plaintiff engaged in interstate commerce at the time of the injury, within the meaning of the federal Employers' Liability Act? We think there is no such direct connection with the plaintiff's work and interstate commerce, under the facts disclosed in this record, as to make the federal Employers' Liability Act apply. In our opinion this cause is controlled by the principles announced in *Minneapolis & St. Louis R. R. Co.* v. *Winters*, 242 U. S., 353, 37 Sup. Ct. 170, 61 L. Ed. 358, Ann. Cas. 1918B, 54, and *B. & O. R. R. Co.* v. *Branson*, 242 U. S. 623, 37 Sup. Ct. 244, 61 L. Ed. 534, and the authorities therein cited.

The other assignments of error are not well taken. Accordingly the judgment of the court below will be affirmed.

*Affirmed.*