JAMES SWAIN, RESPONDENT, v. TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed January 11, 1927.

1.—Railroads—Lessor and Lessee—Negligence—Liability of Lessee or Licensee for Torts. Under sections 9879 and 9880, Revised Statutes 1919, and also under the laws of Illinois, whenever a railroad, street railway, or other railway company or corporation leases its road, or track, or any part thereof, to another company or corporation, or licenses or permits another company or corporation, under any running agreement, to run cars, engines, or rolling stock, upon its road or tracks, the company or corporation so leasing its road, or any part thereof, to such other company or corporation, or so licensing or permitting the use of its road or track by such other company or corporation, remains liable for the negligence or tort of the lessee or licensee company or corporation, the same as if the lessor or licensor company or corporation operated the road, or such part thereof, itself.

2.—Same—Negligence—Federal Employers' Liability Act—Bridges—Employee Injured While Engaged in ¡Repairing Upper Deck of Double-deck Bridge—Interstate Commerce. In an action by an employee against a railroad company to recover damages for personal injuries, under the Federal Employers' Liability Act (U. S. Comp. St., sections 8567-8665), where plaintiff was engaged at the time of his injury in work on the upper deck of a double-deck bridge, both decks of which were used by defendant in its interstate commerce, and it appeared that at the time of his injury plaintiff was engaged, with other employees of defendant, in unloading an interstate shipment of freight at its destination, which had been transported by de-

fendant over its interstate railroad line from one State to another; that defendant at the time of plaintiff's injury was engaged in repairing the parts of the bridge above the tracks on the lower deck, which tracks were used by defendant in its interstate commerce, such repairs consisting chiefly in removing old girders and replacing them with new ones, and plaintiff, with other employees, was removing the new girders from a flat car to the bridge to replace the old girders taken from the bridge, and although the bridge had two decks appropriated to different uses, it was a single integral structure, and the maintenance of the upper deck and upper parts was essential to the protection and security of the interstate commerce transacted by defendant on the lower deck and so closely related as to be, in practice and in legal contemplation, a part of such commerce; that the railroad tracks of defendant on the upper deck of the bridge were used by electric interurban railroad companies in transporting passengers in interstate commerce, under an agreement with defendant and paid toll therefor, and by virtue of this use defendant was engaged in interstate commerce on the upper deck of the bridge and plaintiff, in repairing same, was engaged in such commerce, **held** from either of the several foregoing considerations plaintiff was at the time of his injury employed in defendant's interstate commerce within the meaning of the Federal Employers' Liability Act.

3.—Same—Same—Same—Same—Double Track on Lower Deck—One Track Temporarily Withdrawn—Employee Injured While Engaged in Repairing Upper Deck—Interstate Commerce. The fact that one of two railroad tracks on the lower deck of a bridge extending from one State to another and used in interstate commerce was withdrawn from use temporarily while plaintiff was at the time placing girders in the upper deck of the bridge, **held** plaintiff was engaged in interstate commerce within the meaning of the Federal Employers' Liability Act (U. S. Comp. St., sections 8657-8665) as the work done by him at the time in placing girders in the upper deck was in furtherance of defendant's interstate commerce.

*Corpus Juris-Cyc. References: Commerce, 12CJ, p. 45, n. 22; p. 47, n. 32, 34 New; Railroads, 33Cyc, p. 705, n. 34.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Granville Hogan, Judge.

AFFIRMED.

J. L. *Howell* and *S. P. McChesney* for appellant.

(1) The court erred in refusing to give the instruction offered by the defendant at the close of plaintiff's case. (a) Because not only must the carrier be engaged in interstate commerce at the time of the accident, but also the person injured must be employed by the carrier in such commerce. Shanks v. Delaware, Lackawana & Western Ry., 239 U. S. 556. (b) Because at the immediate time that the accident happened the track upon which the flat car was standing and upon which plaintiff was working was withdrawn from commerce and the work being done by plaintiff at the time in placing floor girders in the upper deck was not in furtherance of this defendant's interstate commerce in operating its railroad in interstate commerce. Industrial Commission v. Davis, 259 U. S. 556. (2) The court erred in giving plaintiff's instruction No. 1 purporting to cover the whole case, because said instruction left out one

of the main defenses made by defendant, which was whether the plaintiff himself at the time was engaged in interstate commerce. Clark v. Hammerle, 27 Mo. 55. (3) The court erred in refusing defendant's instructions I and M. (a) While usually a question of law for the court, in this case, under the pleadings and evidence, it was a question of fact for the jury under proper instructions. Myers v. C. B. & Q. R. R. Co., 296 Mo. 239. (b) Because under the pleadings and evidence adduced no instruction was given for the defendant submitting its theory of the law. Harris v. Railroad, 203 Mo. App. 324. (4) The court erred in excluding from the evidence the report or ruling of the Interstate Commerce Commission offered in evidence by the defendant, in support of the defense pleaded in its answer. 4 Fed. Stat. Ann. (2 Ed.), 495, sec. 19a (a), sec. 19a (d). (5) The court erred in excluding from evidence the Illinois Compensation Act, pleaded in defendant's answer as a defense; because the evidence was controverted as to whether the plaintiff was engaged in interstate commerce at the time of his alleged injuries, and controverted as to whether he was on the west or east of the midline of the Mississippi River at the time of his alleged injuries. Because if the jury found plaintiff was not engaged in Interstate Commerce at the time of his alleged injuries and was working on the east side of the midline of the Mississippi River and was in the State of Illinois he could not recover in this action. Mitchell v. St. Louis Smelting & Refining Co., 202 Mo. App. 251.

*Mark D. Eagleton, John F. Clancy* and *Harry S. Rooks* for respondent.

(1) The court did not err in refusing to direct a verdict for defendant, because: (a) Plaintiff's evidence showed that he was injured in Missouri while unloading material brought from Illinois, and under that state of facts would be engaged in interstate commerce. B. & O./S. W. Railroad v. Burtch, 263 U. S. 540, 68 L. Ed. 433. (b) Further, for the reasons stated under point 2 (b), plaintiff was, as a matter of law, engaged in interstate commerce, and the Federal Employers' Liability Act applied irrespective of whether the injury occurred in Illinois or in Missouri. (2) (a) Plaintiff's instruction No. 1 required the jury to find that the plaintiff "was engaged in his duties for defendant in and about the repairing of the aforesaid bridge, and that the repairs which were then and there being made were incident and necessary to the proper maintenance of said structure, and were to form a permanent part thereof, and that the girders mentioned in evidence, when placed in said structure, did aid and facilitate the handling of interstate commerce for the defendant and were a necessary and permanent

part of said structure." Under those facts plaintiff was engaged in interstate commerce, and the Federal Employers' Liability Act applied. Pedersen v. Railroad, 229 U. S. 146. (b) Further, the undisputed facts show, as a matter of law, that plaintiff was engaged in interstate commerce, and that the Federal Employers' Liability Act applied. It conclusively appeared that defendant was a common carrier for hire by railroad using said bridge in interstate commerce for the defendant and were a necessary and permanent and that plaintiff was repairing the bridge for defendant. Pedersen v. Railroad, 229 U. S. 146. If the upper decks were not repaired, the interstate commerce on the lower deck would be endangered and ultimately stopped (B. & O. Railroad v. Darling, 3 F. [2nd] 987, 988). The bridge being a single integral structure, the part above the lower deck was part of defendant's railroad facilities used in interstate commerce. Under the laws of both Missouri and Illinois the defendant, as lessor (or licensor), is liable for negligence of the lessee (or licensee) railways using the upper deck. Lucas v. Peoria & Eastern Ry. Co., 171 Ill. App. 1, 4; R. S. 1919, secs. 9879, 9880; Shaffer v. Ry. Co., 300 Mo. 477; Brady v. Railroad, 206 Mo. 509; Chicago Rys. Co. v. Kramer, 234 Fed. 245. In view of defendant's liability as above stated, defendant must be construed as operating the railways using the upper deck in deciding whether the Federal Employers' Liability Act applies. N. C. Railroad v. Zachary, 232 U. S. 248; Spaw v. Ry. Co., 198 Mo. App. 552; Southern Ry. Co. v. Lloyd, 239 U. S. 496, and cases cited supra under preceding paragraph. The court takes judicial notice, not only of the Eads Bridge as a historic structure and engineering feat, but also its use by carriers in interstate commerce. Brewer v. Railroad Co., 259 S. W. 825. Further, although the Federal Employers' Liability Act requires that the employer be a common carrier by railroad engaged in interstate commerce, and that the employee when injured shall be engaged in interstate commerce, it does not expressly require that the injured employee shall be engaged in the employer's railroad interstate commerce. *Arguendo*, see Second Employers' Liability Cases, 223 U. S. 1, holding that the instrumentality or employee causing the injury need not be engaged in interstate commerce. (3) (a) Defendant's instructions I and M were properly refused, because they were ambiguous, misleading, contained conclusions of law, and erroneously declared as a matter of law that plaintiff could not be engaged in interstate commerce unless the upper deck was used by defendant in its interstate railroad business. And said instructions ignore the evidence of plaintiff tending to show that he was unloading an interstate shipment. See point 1 (a). (b) The plaintiff was, as a matter of law, engaged in interstate commerce, and the Federal

Employers' Liability Act applied; hence these instructions submitting matters of fact pertaining thereto were unnecessary. See point 2 (b), supra. (c) Instruction M erroneously assumed that the upper deck of said bridge was not used as an instrumentality by the defendant in the operation of its railroad in interstate commerce, and failed to require a finding of that fact, which, even under defendant's theory, should have been left to the jury and not assumed. (4) (a) The ruling of the Interstate Commerce Commission classifying the physical properties of defendant for valuation purposes was not competent to prove any issue in this case. (b) Further, since plaintiff was, as a matter of law, engaged in interstate commerce, for reasons stated *ante* under point 2 (b), the evidence could not affect the result. (c) If the ruling was matter of fact, it was incompetent, because not binding on the plaintiff, and not directed to the issues involved in this case; if the Commission's ruling was matter of law, the court took judicial notice of it and evidence thereof would not be necessary. (d) The burden is upon appellant to prove error and not upon respondent to disprove it. The presumption is that the trial court did not err. (5) Evidence of the Illinois Workmen's Compensation Act was inadmissible because immaterial. Irrespective of whether plaintiff was injured in Illinois or in Missouri, he could recover by the petition in this action only under the Federal Employers' Liability Act. Miller v. Schaff, 228 S. W. 488. The fact that by amendment the plaintiff could have changed the petition so as to recover under State laws does not affect the limitation of his right to recover under the theory pleaded. Under the present petition the plaintiff had to recover under the Federal Employers' Liability Act or not at all.

SUTTON, C.—This is an action to recover damages for personal injuries under the Federal Employers' Liability Act. The trial, with a jury, resulted in a verdict and judgment in favor of plaintiff for the sum of $5,000, and the defendant appeals.

The plaintiff at the time of his injury was in the employ of defendant, and was engaged in work on the Eads Bridge, which spans the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois. The Eads Bridge is owned by the St. Louis Bridge Company, and the defendant operates and maintains the bridge under a lease from the St. Louis Bridge Company. Defendant is a common carrier for hire by railroad, engaged in interstate commerce. The bridge is one complete structure, having a lower deck over which defendant operates interstate trains and an upper deck over which travel interstate wagons, automobiles, pedestrians, a number of street car lines, and also electric interur-

ban cars carrying passengers. Defendant charges toll for all such traffic, and permits the street cars and interurban cars to use the upper deck tracks.

At the time of the accident defendant was engaged in repairing the upper deck of the bridge, taking out old beams or girders and replacing them with new ones, which supported the floor and tracks of the upper deck and upper parts of the bridge. New girders were brought from Illinois to the place of work on the bridge by defendant on a flat car on the lower-deck tracks, to be placed into the upper part of the bridge, and old girders were taken out and transported back to the Illinois side. The girders being put in were attached to the same structure that supports the lower deck as well as the upper deck. Defendant made all repairs on the bridge and maintained the entire structure. It was in removing the girders from the flat car to the bridge to put them in the bridge, that plaintiff was injured. The girders were iron I-beams, and weighed about six thousand pounds each. Plaintiff was an iron worker in the employ of defendant and was engaged in the above work.

Whether the particular place of work at the time of the accident was in Missouri or Illinois was a disputed question at the trial. Plaintiff's testimony tended to show that it was in Missouri, while defendant's evidence tended to show that it was in Illinois.

Defendant's answer admits that it is a corporation operating a railroad in the State of Missouri and in the State of Illinois and operating its railroad over the Eads Bridge, which spans the Mississippi River between the States of Missouri and Illinois, and that the plaintiff at the time of his injury was working on the Eads Bridge, and that at said time plaintiff was assisting in placing girders in the upper deck of the bridge and remodeling same.

The defendant insists here that the court below erred in refusing to give the instruction offered by defendant in the nature of a demurrer to the evidence at the close of plaintiff's case, because, though it appears that the defendant was engaged in interstate commerce as a common carrier by railroad, it was not shown that the plaintiff was employed by defendant in such interstate commerce, at the time of his injury.

. By section 1 of the Federal Employers' Liability Act of 1908, under which this suit is brought, it is enacted:

"That every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . resulting in whole or in part from the negligence of any of the officers, agents or em-

ployees of such carrier, or by reason of any defect·or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment.''

In Second Employers' Liability Cases, 223 U. S. 1, 1. c. 46, the Supreme Court of the United States, discussing the constitutionality of the Federal Employers' Liability Act of 1908, said:

''The clauses in the Constitution (Art. 1, sec. 8, clauses 3 and 18) which confer upon Congress the power 'to regulate commerce . . : among the several States' and 'to make all laws which shall be necessary and proper' for the purpose have been considered by this court so often and in such varied connections that some propositions bearing upon the extent and nature of this power have come to be so firmly settled as no longer to be open to dispute, among them being these:

''1. The term 'commerce' comprehends more than the mere exchange of goods. It embraces commercial intercourse in all its branches, including transportation of passengers and property by common carriers, whether carried on by water or by land.

''2. The phrase 'among the several States' marks the distinction, for the purpose of governmental regulation, between commerce which concerns two or more States and commerce which is confined to a single State and does not affect other States, the power to regulate the former being conferred upon Congress and the regulation of the latter remaining with the States severally.

''3. 'To regulate,' in the sense intended, is to foster, protect, control and restrain, with appropriate regard for the welfare of those who are immediately concerned and of the public at large.

''4. This power over commerce among the States, so conferred upon Congress, is complete in itself, extends incidentally to every instrument and agent by which such commerce is carried on, may be exerted to its utmost extent over every part of such commerce, and is subject to no limitations save such as are prescribed in the Constitution. But, of course, it does not extend to any matter or thing which does not have a real or substantial relation to some part of such commerce.

''5. Among the instruments and agents to which the power extends are the railroads over which transportation from one State to another is conducted, the engines and cars by which such transportation is effected, and all who are in any wise engaged in such transportation, whether as common carriers or as their employees.

''6. The duties of common carriers in respect of the safety of their employees, while both are engaged in commerce among the States, and the liability of the former for injuries sustained by the latter, while both are so engaged, have a real or substantial rela-

tion to such commerce, and therefore are within the range of this power. . . .

''As is well said in the brief prepared by the late Solicitor-General: 'Interstate commerce—if not always, at any rate when the commerce is transportation—is an act. Congress, of course, can do anything which, in the exercise by itself of a fair discretion, may be deemed appropriate to save the act of interstate commerce from prevention or interruption, or to make that act more secure, more reliable or more efficient. The act of interstate commerce is done by the labor of men and with the help of things; and these men and things are the agents and instruments of the commerce. If the agents or instruments are destroyed while they are doing the act, commerce is stopped; if the agents or instruments are interrupted, commerce is interrupted; if the agents or instruments are not of the right kind or quality, commerce in consequence becomes slow or costly or unsafe or otherwise inefficient; and if the conditions under which the agents or instruments do the work of commerce are wrong or disadvantageous, those bad conditions may and often will prevent or interrupt the act of commerce or make it less expeditious, less reliable, less economical and less secure. Therefore, Congress may legislate about the agents and instruments of interstate commerce, and about the conditions under which those agents and instruments perform the work of interstate commerce, whenever such legislation bears, or in the exercise of a fair legislative discretion can be deemed to bear, upon the reliability or promptness or economy or security or utility of the interstate commerce act.' ''

These expressions of the Supreme Court, though uttered in the discussion of the constitutionality of the Federal Employers' Liability Act, have nevertheless an important bearing upon the proper construction of the act.

In Baltimore & Ohio Southwestern R. Co. v. Burtch, 263 U. S. 540, an injury to an employee of the carrier, occurring while he was engaged in unloading an interstate shipment of freight at its destination, was held to be within the Employers' Liability Act. In that case the court said:

''It is necessary to show further that 'the employee at the time of the injury (was) engaged in interstate transportation or in work so closely related to it as to be practically a part of it.' [Shanks v. Delaware, Lackawanna & Western R. R. Co., 239 U. S. 556, 558.] . . . It is too plain to require discussion that the loading or unloading of an interstate shipment by the employees of a carrier is so closely related to interstate transportation as to be practically a part of it, and it follows that the facts fully satisfy the test laid down in the Shanks case, supra.''

In Pedersen v. Delaware, Lackawanna & Western R. Co., 229 U. S. 146, the defendant was operating a railroad for the transportation of passengers in interstate and in intrastate commerce, and the plaintiff was an iron worker employed by defendant in the operation and repair of some of its bridges and tracks. The plaintiff on the afternoon of his injury was carrying from a tool car to a bridge some bolts or rivets which were to be used by him that night or very early the next morning in repairing that bridge, the repair to consist in taking out an existing girder and inserting a new one, and while so engaged was run down and injured by an intrastate passenger train, and it was held that the plaintiff's injury was within the Federal Act. The court in argument said:

"Considering the terms of the statute, there can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce; but it is not essential, where the causal negligence is that of a co-employee, that he also be in such commerce, for, if the other conditions be present, the statute gives a right of recovery for injury or death resulting from the negligence 'of *any* of the . . . employees of such carrier,' and this includes an employee engaged in intrastate commerce. [Second Employers' Liability Cases, 223 U. S. 1, 51.]

"That the defendant was engaged in interstate commerce is conceded, and so we are only concerned with the nature of the work in which the plaintiff was employed at the time of his injury. Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency . . . in its cars, engines, appliances, machinery, track, road-bed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in

practice and in legal contemplation a part of it. The contention to the contrary proceeds upon the assumption that interstate commerce by railroad can be separated into its several elements and the nature of each determined regardless of its relation to others or to the business as a whole. But this is an erroneous assumption. The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?'' [See also Baltimore & Ohio R. Co. v. Darling, 3 Fed. (2nd Series) 987; Spaw v. Kansas City Terminal Ry. Co., 198 Mo. App. 552, 201 S. W. 927; Brewer v. Missouri Pacific R. Co. (Mo. App.), 259 S. W. 825.]

It is the law of Missouri and also of Illinois that whenever a railroad, street railway, or other railway company or corporation, leases its road, or track, or any part thereof, to another company or corporation, or licenses or permits another company or corporation under any running agreement, to run cars, engines, or rolling stock, upon its road or track, the company or corporation so leasing its road, or any part thereof, to such other company or corporation, or so licensing or permitting the use of its road or track by such other company or corporation, remains liable for the negligence or tort of the lessee or licensee company or corporation, the same as if the lessor or licensor company or corporation operated the road, or such part thereof, itself. [Secs. 9879 and 9880, R. S. 1919; Shaffer v. Chicago, R. I. & P. R. Co., 300 Mo. 477, 254 S. W. 257; Brady v. Kansas City, St. L. & C. R. Co., 206 Mo. 509, 102 S. W. 978, 105 S. W. 1195; Spaw v. Kansas City Terminal R. Co., 198 Mo. App. 552, 201 S. W. 927; Anderson v. West Chicago Street Railroad Co., 200 Ill. 329; Lucas v. Peoria & Eastern Railway Co., 171 Ill. App. 1.]

It is obvious from either of several considerations that the plaintiff in the present case was at the time of his injury employed in defendant's interstate commerce, within the meaning of the Federal Employers' Liability Act:

First. Plaintiff at the time of his injury was engaged, with other employees of defendant, in unloading an interstate shipment of freight at its destination, which had been transported by defendant over its interstate railroad line from Illinois to Missouri.

Second. Defendant at the time of plaintiff's injury was engaged in repairing the parts of the bridge above the tracks on the lower deck, which tracks were used by defendant in its interstate commerce. The repairs which were being made consisted chiefly in removing old girders from the bridge and replacing them with new ones. Plaintiff was engaged, with other employees of defendant, in removing the new girders from the flat car to the bridge to put them in the bridge to replace the old girders taken from the bridge. This bridge, though having two decks appropriated to different uses, is nevertheless a single integral structure. The maintenance

in repair of the upper deck and upper parts of the bridge is essential to the protection and security of the interstate commerce transacted by defendant on the lower deck of the bridge, and to save such commerce from prevention or interruption, for if the upper deck and upper parts of the bridge were not kept in repair the same would ultimately fall into ruin, and the interstate commerce transacted on the lower deck would in consequence be endangered, disturbed, prevented, interrupted, or stopped altogether. So that the work of repairing the upper deck and upper parts of the bridge, in which plaintiff was engaged, was so closely related to the interstate commerce transacted on the lower deck, as to be in practice and in legal contemplation a part of such commerce.

Third. The defendant's railroad tracks on the upper deck of the bridge were used by electric interurban railroad companies in transporting passengers between St. Louis, in the State of Missouri, and East St. Louis and other cities, in the State of Illinois. These companies were engaged in interstate commerce within the meaning of the Federal Employers' Liability Act. They used the defendant's bridge and tracks thereon with the authority and permission of the defendant under some sort of contract or running agreement with the defendant, and paid the defendant toll therefor. By virtue of this use the defendant was engaged in interstate commerce on the upper deck of the bridge, and the plaintiff in repairing same was employed in such commerce. [United States v. Village of Hubbard, 266 U. S. 474; North Carolina Railroad Co. v. Zachary, 232 U. S. 248; Chicago Railways Co. v. Kramer, 234 Fed. 245; Southern Ry. Co. v. Lloyd, 239 U. S. 496; Spaw v. Kansas City Terminal R. Co., 198 Mo. App. 552, 201 S. W. 927; Illinois Central R. Co. v. Sheegog, 215 U. S. 308.]

There are two tracks on the lower deck of the bridge. The train which brought the girders to the place of work stood on the north track as the work progressed, and until four o'clock in the afternoon no other trains were allowed to pass over this track, and the defendant contends that at the immediate time that the accident happened this track was withdrawn from interstate commerce and that the work being done by plaintiff at the time in placing girders in the upper deck was therefore not in furtherance of defendant's interstate commerce. We can see no merit in this contention.

Under the conceded facts in this case, the plaintiff's injury comes within the Federal Employers' Liability Act as a matter of law, and in view of this, it would serve no useful purpose to discuss assignments concerning the exclusion of evidence and the giving and refusing of instructions, since the excluded evidence and the criticisms of the court's rulings on the instructions relate exclusively to the issue as to whether or not the federal act applies, and the

admission of the excluded evidence could not have affected the result.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.

Reporter's Note.—Petition for writ of *certiorari* in the above cause was denied by the Supreme Court of the United States October 10, 1927.