## GULF M. & N. R. Co. v. MADDEN.

(In Banc. Feb. 10, 1941. Suggestion of Error Overruled March 24, 1941).

[200 So. 119. No. 34382.]

376

D. M. **Anderson**, of Newton, and **Welch & Cooper**, of Laurel, for appellant.

W. W. Ramsey and Chaney & Culkin, all of Vicksburg, and F. F. Mize, of Forest, for appellee.

Argued orally by **Ellis B. Cooper**, for appellant, and by **Frank F. Mize**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

At a point within the outer environs of the City of Mobile, in the State of Alabama, appellant railroad in its original construction crossed what is termed in the record the Old Shell Road on grade, practically level with the surrounding area. The Alabama State Highway Department desired to eliminate this grade crossing through funds to be furnished by the Federal Bureau of Public Roads, but so to do it was necessary, of course, to secure the cooperation of the railroad company. Plans were finally agreed upon by which the Old Shell Road vehicular highway would be lowered about seven feet, and the railroad tracks would be elevated to a maximum height of about nine feet, and that over the underpass a steel

and concrete railroad bridge would be erected about 193 feet long.

The plans provided that from the north edge of the bridge, where the fill would be about nine feet high, the fill would recede in height at a down grade of 7% until the roadbed would reach the original track about the distance of one-fourth of a mile, and likewise on the south of the bridge thus making the new work something more than a half mile in length. The State Highway Department agreed also to construct and did construct a detour or run-around track west of the original track, which was used for all interstate trains during the several months the work was in progress, and the original track and roadbed was entirely withdrawn from interstate use during that period.

All this work was to be done, and was done, save as to the removal of telegraph and signal lines and the procurement of the right of way for the detour, at the expense of the State Highway Department, through a contract by it with one Toulmin. In order to obtain suitable dirt to make the fills, Toulmin was obliged to go out a distance of six miles to a place on appellant's railroad line called Orchard, still in the State of Alabama. The appellant railroad agreed with Toulmin that he could get the dirt from along the railroad right of way, but that Toulmin at his own expense would load the dump cars which the railroad would furnish, and that the railroad company would then haul the dirt from Orchard to the Old Shell Road for 21 cents a cubic yard, this to include the dumping of the loads at the fill at the Old Shell Road, but the railroad company was to have no part in the work at the Old Shell Road except simply to dump the dirt there.

In this work of hauling the dirt the railroad used standard automatic dump cars. The automatic dump car has two air cylinders on each side and these cylinders are operated by compressed air furnished from the locomotive, and the air for the cylinders is transmitted through two air hose, one for each side of the car. The car will not

dump unless and until its air hose dumping lines are connected with those on the engine. There is a valve lever conspicuously placed at each end of the dump car, and when the lever is put in the open position which will admit the compressed air into the cylinders on a selected side, the cylinder pistons will raise that side of the car and dump its load out on the other side. When no dumping is desired the air hose from the engine to the dumping cylinders are kept disconnected from the engine, or else the valve levers are placed in the closed position, to secure which there is a latch consisting of a chain with a hook by which the valve lever is latched. The air hose connecting with the dumping cylinders are entirely separate from the central brake hose which operates the brakes.

Madden, appellee's decedent, was the head brakeman engaged as a member of the crew in transporting this dirt from Orchard to the Old Shell Road. He had had an experience of some twenty years in railroad operation and was familiar with the dump cars and their use. About the middle of the afternoon of the day in question the engine was ready to be connected with a number of loaded dump cars, three of which will be later mentioned, and the head brakeman went in between the engine and the first of the dump cars and made the coupling; but in addition to the main coupling and the central air hose to the brake line, he coupled up also the air hose feeding the dump cylinders, but without seeing to it that the valve lever at the end of the car, where the coupling was made, was in its closed position,—and the witnesses agree that whether the valve lever was or was not in a dumping position was a thing plainly and easily observable at the point where the coupling is made. A few seconds thereafter the said first car dumped and covered the brakeman, who had reached a position alongside the car, with the heavy load of dirt, resulting in his death. Further of the facts will be mentioned later.

The widow qualified as administratrix of the estate of the decedent in Mobile County, Alabama, the county of her residence, but brought her suit as administratrix against the railroad company in Newton County, in Mississippi, through which a line of the railroad runs. The principal argument between the parties has turned upon the question, whether the case comes within the Federal Employer's Liability Act, 45 U. S. C. A., Sec. 51 et seq. To support the affirmative appellee cites: Pedersen v. Delaware, etc., R. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Swain v. Terminal R. Ass'n, 220 Mo. App. 1088, 291 S. W. 166; Columbia & P. S. R. Co. v. Sauter, 9 Cir., 223 F. 604; Cincinnati, N. O. & T. P. R. Co. v. Hall, 6 Cir., 243 F. 76; Philadelphia & Reading R. Co. v. DiDonato, 256 U. S. 327, 41 S. Ct. 516, 65 L. Ed. 955; New York Cent. R. Co. v. Porter, 249 U. S. 168, 39 S. Ct. 188, 63 L. Ed. 536; Rader v. B. & O. R. Co., 7 Cir., 108 F. (2d) 980, and Kinzell v. Chicago, M. & St. P. R. Co., 250 U. S. 130, 39 S. Ct. 412, 63 L. Ed. 893. The appellant, in maintaining the negative, cites: Raymond v. Chicago, M. & St. P. R. Co., 243 U. S. 43, 37 S. Ct. 268, 61 L. Ed 583; Bravis v. Chicago, M. & St. P. R. Co., 8 Cir., 217 F. 234; Industrial Accident Comm. v. Davis, 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888; New Orleans & N. E. R. Co. v. Beard, 128 Miss. 172, 90 So. 727; The Kinzell case, supra; Thomas v. Boston & M. R. Co., D. C., 218 F. 143; United States v. Chicago, etc., R. Co., D. C., 219 F. 632; Dickinson v. Industrial Board, 280 Ill. 342, 117 N. E. 438; Walz v. Chicago, etc., R. Co., 232 Ill. App. 398; Klomp v. Chicago, etc., R. Co., 210 Ill. App. 375; McKee v. Ohio, etc., R. Co., 78 W. Va. 131, 88 S. E. 616; Otterstedt v. Lehigh, etc., R. Co., 200 App. Div. 386, 193 N. Y. S. 104; Id., 234 N. Y. 203, 137 N. E. 26; Louisville & N. R. Co. v. Morgan's Adm'r, 225 Ky. 447, 9 S. W. (2d) 212; and Chicago, etc., R. Co. v. Lundquist, 206 Iowa 499, 221 N. W. 228.

The rule which has been formulated as a result of the foregoing and many other cases is expressed as follows:

The service performed must be directly and immediately related to interstate commerce and that relation must be so close or intimate as to make the work then being done by the employe practically a part of such commerce. That the stated rule is subject to what a layman would pronounce as hairsplitting distinctions is illustrated by this: When a railroad employe is engaged in dumping coal into the tender of an engine then or about to be used in interstate service, he is within the Federal Act; but when he is engaged in putting coal into a chute thereafter to be dumped from the chute into the tenders of interstate engines, the service is not within the act. Chicago, etc., R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941.

But, the cases are in substantial agreement that employes engaged in the original construction of roadbeds or tracks to be used in interstate commerce are not engaged within the meaning of the statute, while on the other hand those employed in the repair or maintenance of interstate railroad tracks are within the Act. The difficulty is in applying the distinction between construction and repair to a given state of facts. Ordinarily, what is meant by repairs is that there is a restoration of an originally existing condition, but in practical conduct repairs often involve more or less construction, and a betterment or improvement as compared with the original condition.

But when the work being done is well beyond any such proportion as may be fairly ascribed to the concept of a repair, then it must go over into the classification as construction. Here the old roadbed was practically on a level with the adjacent territory. The old roadbed, for more than half a mile, had been released from the operation of trains for a period of several months, and for more than two months when this accident occurred, and all the trains were being operated over a detour track west of and parallel to the old roadbed. They were not repairing the old roadbed or track, but they were superimposing upon this old roadbed a new construction con-

sisting of a fill not therefore existing which reached at the bridge a height of nine feet, and at this point, and as an essential part of the new work, there was a new bridge, none ever having been there before.

This enormous and costly project cannot be fairly ascribed to the concept of a repair, and the fact that it was being erected upon the ground previously occupied by the tracks and was to be used when completed for the operation of interstate commerce can have no more effect to make it a repair, rather than construction, than in the cases, Thomas v. Boston & M. R. Co., D. C., 218 F. 143, and Wright v. Interurban R. Co., 189 Iowa 1315, 179 N. W. 877, in which certiorari was denied. 255 U. S. 570, 41 S. Ct. 375, 65 L. Ed. 791.

In the Thomas case, a roundhouse previously used as an instrumentality in interstate commerce was rendered useless by a fire, and it was being reconstructed at the same spot. It was held that an employee engaged in the process of the new construction was not employed in interstate commerce. In the Wright case, a substation theretofore used as an instrumentality in interstate commerce was being reconstructed, during which time a temporary substation was provided nearby. It was held that a railroad employe engaged in the reconstruction of the original substation was not employed in interstate commerce. We would suppose that if the old substation were only one story in height and it had become advantageous to the service to add a second and third floor, it would not be contended that in the progress of the work on the two additional stories, the first story being for the time abandoned for use, an employe in that work was engaged in interstate commerce, or in repair rather than construction.

Other lines of reasoning than those above mentioned have been suggested in our conferences, but we do not deem it necessary to elaborate beyond what has already been said, and simply add that we have reached the conclusion that the decedent was not at the time of the

fatal accident employed in interstate commerce. In view of the fact, however, that as to the questions involved we are a court of intermediate appeal and that the rule hereinabove stated, although as definite as has yet been authoritatively pronounced, is yet so indefinite that at last the facts as the court of final appeal sees them is to control, we have proceeded to a further consideration of the case as if the employe was at the time within the coverage of the act; and as a result of that consideration we have reached the further conclusion that no liability has been shown under the act, and we state the grounds for that conclusion by way of summaries, rather than by detailed discussion, to save an undue prolongation in the written opinion, which even with this treatment will be of more than ordinary length.

The first count of the declaration charges that the defendant railroad company had failed and neglected to provide locks or keys to hold the valve lever in position. This charge is not sustained by any substantial, competent evidence; but the contrary is shown by the undisputed testimony of two witnesses, competent and expert in the maintenance and repair of cars of this kind, who examined the particular car and its equipment a few hours after the injury—no changes in the equipment having in the meantime been made. No witness for appellee saw the particular car for more than a month after the accident, and instead of the testimony for appellee being addressed to the particular car, it dealt with a number of cars of similar kind, thus falling within the error pointed out in J. W. Sanders Cotton Mill v. Moody, 189 Miss. 284, 195 So. 683.

The second count is so framed as to seek the application of the doctrine res ipsa loquitur. It charges that with the valve lever closed the car would not and could not have dumped prematurely had the equipment been in proper repair and in reasonably safe condition for use, and it further charges that the valve lever had not been opened by hand at the time of the accident. But the un-

disputed testimony of the train crew who reached the dumped car in a few minutes after the accident, and being the only persons present, shows that in fact the valve lever was in the open or dumping position; and this being shown, appellee has attempted to prevail on a theory or ground that it was through some supposed negligence on the part of the employer that the valve lever had been placed in the dumping position.

But as to how long the valve lever had been in the dumping position, or who put it in that position, the record is wholly silent. The record does show, and without dispute, however, that when, during the forenoon, the engine and other cars were carried to the place of unloading at the Old Shell Road construction work, appellee's decedent was left at Orchard with three dump cars, of which the particular car was one, with comprehensive instructions by the conductor to inspect the three cars and to see that they were each in safe and proper condition to couple into the train on the afternoon trip. If then the valve lever was out of position when that afternoon appellee's decedent coupled the car in question to the engine—and it was out of position—it was because appellee's decedent had not complied with the instructions aforesaid.

In response to the matter mentioned in the next above paragraph, appellee introduced some labor official who testified that it was not a part of the duties even of a head brakeman to inspect any part of the air dumping equipment. But the decedent accepted the assignment, was left there for that purpose during three hours pay time with nothing else to do, under which circumstances the employer had a right to rely on his performance.

If, however, all that is said in the two foregoing paragraphs were laid aside, it is undisputed that the conductor had instructed appellee's decedent, the head brakeman, not to couple the air hose from the engine to the dumping line until the point of unloading at the Old Shell Road should be reached, and it is undisputed that

the decedent, the head brakeman, contrary to the instructions, did connect the dumping line to the engine at Orchard, with the consequence that in about 15 seconds the car dumped, which it could not have done without the connection made by decedent, contrary to instructions. As we understand the briefs, appellee attempts to meet this with the contention that what appellee's decedent did was contributory negligence which would not entirely defeat the action, but we think appellee has failed to draw the distinction between contributory negligence and proximate cause.

More than a year after the injury appellee added, by amendment, a third count to her declaration wherein she expressly stated that she "sues as administratrix" of the estate of the deceased, but sought by said third count to bring the action under the Workmen's Compensation Laws of the State of Alabama. Code Ala. 1923, Sec. 7534 et seq. To this count appellant filed three special pleas raising the questions (1) that there is no right in an administratrix to sue for the compensation under the state law aforesaid; and (2) that although the widow had throughout the time been a resident of Alabama, the parties had not within one year after the accident agreed on the compensation, and that no complaint had within one year been filed seeking compensation under that law. Issue in short was joined by consent on those pleas. At the conclusion of the evidence the court granted appellant a peremptory instruction on the third count. Appellee complains of this action by a cross-appeal.

In several decisions by the Supreme Court of Alabama, it has been held, and we have found none to the contrary, that the right of action under the Workmen's Compensation Laws of that state, for the death of an employe, is conferred solely upon the dependents of the employe as individuals, and does not extend to the personal representative of the deceased employe. Georgia Cas. Co. v. Haygood, 210 Ala. 56, headnote 3, 97 So. 87; Ex parte Havard, 211 Ala. 605, 100 So. 897; Baughn v. Little Ca-

haba Coal Co., 213 Ala. 596, 105 So. 648, and Lawrence v. United, etc., Co., 226 Ala. 161, 145 So. 577. And in the Baughn case, supra, the court held that a suit under the said compensation law by a widow of the deceased as the administratrix of his estate is not a suit under that law; that such a suit is by a different party as compared with a later suit brought for the same death by the widow as an individual; that in one case she is the representative of the estate of the deceased, and in the other she is an individual, the court saying [213 Ala. 596, 105 So. 649]: ''Nicia Baughn, the widow of decedent, party plaintiff in this suit, is not the same party as Nicia Baughn as administratrix of the estate of this decedent in the first suit.''

Suppose, however, we should attempt to come to the relief of appellee and should of our own motion strike from the third count the character or title in and by virtue of which she has sued therein and should consider her said count as if presented by her as an individual. We would be at once confronted with this inadmissible situation: She would be suing in the first two counts as administratrix, in which counts she must so sue, since under the Federal Employer's Liability Act the personal representative is the only person who may sue, and in the same case there would be the third count in which a different party would be the plaintiff. It would not be contended that John Doe and Richard Roe, injured as passengers in the same railroad accident, could join as plaintiffs in the same suit in two counts, one for John and the other for Richard. Moreover, the obligation under the Workmen's Compensation Law is one which the courts generally hold is contractual, including the Alabama courts, Baker Tow Boat Co. v. Langer, 22 Ala. App. 575, 117 So. 914; so that we would have two counts sounding in tort and a third on a distinct cause ex contractu, which is not permitted in this jurisdiction. Hazlehurst v. Cumberland, etc., Co., 83 Miss. 303, 35 So. 951.

So it is that had the third count been by the widow as an individual, the appellant would have been entitled, by proper challenge in the trial court, to have the plaintiff elect whether she would stand on the first two counts, or on the third. See Hall v. Stokely, 156 Miss. 673, 126 So. 475. Wherefore we cannot on appeal present to appellant a situation different from that which it was called on to meet in the trial.

The appellant was entitled to the requested peremptory instructions on all of the counts.

Reversed and judgment here for appellant.