EDWARD CUNNINGHAM, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Appellant.

**Kansas City Court of Appeals, May 15, 1911.**

1. **MASTER AND SERVANT: Poisonous Substance: Warning.** If a master puts his servant to work in handling railroad ties which have a poisonous substance on them, which will adhere to his hands, and which is put on them to preserve them, it is the duty of the master to warn the servant of the poison, and if he fails to do so and the servant, in ignorance of the character of the substance, gets it into his eyes by wiping his face with his hands, the master is liable for the injury.

2. ————: ————: **Knowledge: Negligence as Matter of Law.** An instruction which submits to the jury the question whether the master knew of a poisonous substance on articles he directs his servant to handle, which would poison the eyes of it got into them, and did not warn him, and that the servant did not know these things; it is not error to declare this to be negligence on the part of the master as a matter of law.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Masman,* Judge.

AFFIRMED.

*Culver, Phillip & Spencer* for appellant.

*Charles C. Crow* and *John S. Boyer* for respondent.

(1) The evidence clearly shows that to handle a substance containing twenty-eight per cent of carbolic acid is dangerous to the human body, and especially to the eye; and respondent being ignorant of what the substance contained, and appellant having actual knowledge thereof, and failing to warn respondent and notify him of what the substance contained, and the danger in handling it, the demurrer to the evidence was properly overruled. Reickert v. Packing Co., 136 Mo. App. 565;

Omans v. Packing Co., 132 S. W. 283; Leine v. Contracting Co., 134 Mo. App. 557-563; Czernicke v. Ehrlich, 212 Mo. 386. (2) Instruction No. 1 given at the request of plaintiff was correct, because it required the jury to find every fact necessary to render appellant liable, and then instructed the jury to find for plaintiff, if it found such facts to be true. The facts stated in the instruction which the jury were required to find, if the finding should be for plaintiff, rendered the defendant clearly negligent as a matter of law, and the form of this instruction has been approved by many Missouri decisions. Tyler v. Hall, 106 Mo. 313; Duerst v. Stamping Co., 163 Mo. 607; Hinzeman v. Ry. Co., 182 Mo. 611; Kimbel v. Ry. Co., 108 Mo. App. 78; Summers v. Ry. Co., 108 Mo. App. 319. Instruction No. 6 correctly states the measure of damage and requires the jury to find all of the elements of damage stated therein from the evidence in the case, and no intelligent layman could understand the instruction otherwise. The instruction does not authorize the jury to award respondent damages for loss of time or wages, although without objection on the part of appellant's testimony authorizing recovery for loss of wages was introduced by respondent.

ELLISON, J.—Plaintiff was an employee of defendant, engaged in handling railway ties, and at the particular instance in which this controversy had its origin, he was in charge of a foreman and engaged in unloading ties from a car. His eyes became poisoned in the manner herein stated and he brought this action for damages. He recovered judgment in the trial court.

It appears that defendant, in order to prolong the service of its ties, put them through a preparatory process by offering a "liquid emulsion" into them by hydraulic pressure where it would be absorbed. There was evidence in defendant's behalf tending to show that this liquid consisted of twenty-three per cent creosote and seventy-three per cent of a zinc chloride solution. It is

said by defendant that "practically all of the creosote is forced into the wood, all the superfluities adhering to the outside of the tie being removed by a vacuum process." By some means, not necessary to say, the compound produced a certain portion or per cent of carbolic acid; defendant says five per cent, and plaintiff twenty-eight per cent. There was evidence tending to support each theory. At all events, there was a substance like pitch or tar that came upon the outside of the ties, which would adhere to the hands of those who touched it.

Plaintiff was wearing cotton gloves while he handled the ties, and as it was warm, would perspire when at work. While at work, he ran his hand over his face, or, as he expressed it, "I wiped my hand across my eyes that way." (Illustrating). "I did it to wipe the sweat off." When he did this, he got some of the substance into his eyes which had adhered to his gloves from the ties, and they were poisoned to such degree as to interfere with his sight and do him great injury.

It was shown that plaintiff was a laborer or ordinary intelligence and 39 years old. But he was not a man of scientific attainments, and it was not shown that he knew that the substances with which the ties had been treated were poisonous. In such circumstances it was the duty of the master to inform him of the danger. "One of the recognized duties of the master is not to expose an inexperienced servant at whose hands he requires a dangerous service, without giving him warning." [Deeds v. Ry. Co. (not yet reported) ; Hysell v. Swift & Co., 78 Mo. App. 39; 2 Bailey's Personal Injury, secs. 2664-2666.] We decided in a case not yet officially reported, that where a master exposed his servant to the danger of a flying chipping from a block of caustic soda, a chip striking him in the eye and burning it, that the servant would not be presumed to know of the dangerous properties of the soda and the master was liable. [Omans v. Hammond Packing Co., 132 S. W. 283.] And in Reickert v. Packing Co., 136 Mo. App.

568, we held it to be the duty of the master to inform the uninformed servant of the danger from "a steam caustic solution," which injured his bare feet while engaged at work.

But it is said that the defendant could not reasonably be required to expect that an injury would come to plaintiff through adherence of the poison to his glove and thence be communicated to his eye. In Hysell v. Swift & Co., 78 Mo. App. 39, 47, a case where a servant's eye was put out by bacteria in the dust arising from cleaning an iron rail, we said that: "When injury is unlikely to follow lack of the information just referred to; when it cannot reasonably be expected to follow; when the chance of injury on account of lack of information is remote and could not reasonably have been anticipated and would not have happened unless in exceptionable circumstances, then a failure to provide against a resulting injury is not negligence," and we held that the danger was so remote and was so far outside of and beyond the ordinary that the master was not liable. But in the present case the facts and circumstances are so different as to call for a different conclusion. Here is a material poisonous substance on the outside of ties, which was bound to adhere to the hands of those who moved them from place to place. In the Hysell case the injury came from dust floating in the air which contained impalpable substances, which ordinarily the human organism resists without resulting harm; while here is a substance which if applied to a membranous part of the body is bound to affect it injuriously,—the only question in the matter being whether one might reasonably be expected to get it into his eye. Any one must know and expect that a laborer handling the ties would get it on his hands, and we think it ought also to be reasonably expected that it might thence be communicated to the eyes in just the way this occurred. What is more natural or common, in actual experience, than that a laborer, perspiring from his work, will "wipe the sweat"

from his face with his hand? And if the hand is covered with a poison, why should it not be expected it would probably get into the eye? We therefore hold defendant's demurrer to the evidence was properly overruled.

The only remaining question relates to the instructions. Defendant complains of one for plaintiff in that it directs the jury as a matter of law that it was negligence in defendant not to warn plaintiff of the danger. We think the criticism not well made. The instruction submits to the jury to find that the poisonous substance was on the ties and that it was injurious if it came in contact with the eye; and that plaintiff neither knew of the poison, nor its injurious and poisonous character on getting into the eye; and that defendant *did* know these things, and failed to notify plaintiff of the character of the substance; and plaintiff while in the exercise of ordinary care, etc. This submits all necessary questions of fact, arising under the evidence, as a basis for the application of the law. If defendant knew what is there submitted to be found by the jury, and plaintiff did not know, then it was negligence as a matter of law not to warn him. That part of the criticism referring to a failure to include in the instruction whether plaintiff by the exercise of ordinary care could have known of the poisonous substance, leaves out of view the fact there is no reasonable ground, under the evidence, upon which to base a hypothesis that plaintiff should have inquired whether this substance was a poison. The mere fact that he saw the substance on the ties and could smell it, is not ground sufficient to put him, as a laborer, on inquiry as to whether it was a poison of such deadly character as to poison his eyes if he wiped the sweat from his face. We do not consider the authorities cited by defendant as applicable to the plain terms of this instruction.

The objection that instruction No. 6 for plaintiff has the vice of assuming that he will not be able to perform

his ordinary vocation, is too technical for practical consideration. As a whole, the instruction would not be taken as an assumption in any particular. Nor is it objectionable in any other part.

There was no error in refusing to permit a chemist in defendant's employ in preparing the ties, to testify as to what he had not heard about injuries to others. He stated in testimony how it sometimes affected others. But aside from this, in view of other parts of the record, no possible harm could have resulted from the ruling.

In view of the small verdict of five hundred dollars the energy which is apparent in this defense, which has not omitted any matter available, however · technical, makes it apparent that defendant's chief feeling in the matter is that it does not believe in the reality of plaintiff's claim, or that the condition of his eyes resulted from the cause he alleges. Be that as it may, there was evidence which called for the opinion of the jury, and by that we must abide.

There being no material error, the judgment is affirmed. All concur.