E. R. SPAW, Appellant, v. KANSAS CITY TERMINAL RAILWAY COMPANY, a Corporation, and CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, a Corporation, Respondents.

Kansas City Court of Appeals, January 28, 1918.

1. **NEGLIGENCE:** Federal Employers' Liability Act: Exclusive Remedy. When the facts and circumstances surrounding an injury to an employee of a railroad engaged in Interstate Commerce bring the case within the provisions of the Federal Employers' Liability Act, such act is supreme and excludes every other remedy.

2. ———: **Liability of Lessee Railroad: Interstate Commerce.** If an employee of a lessor railroad is injured while engaged in work, which, at one and the same time, was not only a part of the general interstate commerce of such lessor but also of the particular Interstate Commerce being carried on by the lessee, then such injured person would, at the very time of his injury, be engaged in the Interstate Commerce of both roads, and would be an "employee" of both roads within the meaning of the Interstate Commerce Act.

3. ———: **Federal Employers' Liability Act: Limitations.** An action for damages for negligence of a railroad commenced more than two years after the injury occurred cannot be maintained when the facts bring the case within the Federal Employers' Liability Act.

4. ———: **Interstate Commerce.** When the work being done at the time of the injury is such that it directly affects or facilitates the carriage of Interstate Commerce, then the injured employee is engaged in such commerce.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Handy & Swearingen* for appellant.

*Fred S. Hudson, S. W. Sawyer* and *J. R. Bell* for respondent.

TRIMBLE, J.—Plaintiff brought this action, under State law, against both defendants to recover damages for an injury inflicted upon his eye by a red hot cinder emitted from an engine of the defendant, Milwaukee railroad, as the result of the alleged negligent maintenance and use thereon of a defective smoke consumer and cinder arrester. The petition alleged that the Milwaukee railroad was operating its trains over the tracks of the Terminal railroad as a lessee for hire.

At the close of plaintiff's case and also at the close of all the evidence, both defendants demurred separately, each asking a peremptory instruction to find in its favor. In urging the final demurrers, the defendants expressly raised the point that the evidence showed the case to be governed by the Federal Employer's Lia-

bility Act. The demurrers were overruled and the case was submitted to the jury which returned a verdict for $7500 against both defendants. Afterwards, the court sustained their separate motions for new trial, the reason assigned for such action being that "the court erred in not sustaining the demurrer of defendants to plaintiff's evidence." Whereupon plaintiff duly appealed.

The injury occurred, and the cause of action accrued, April 24, 1913, but the suit was not brought until August 28, 1915. Consequently, if the cause of action is controlled by the Federal Act, as to both defendants, the plaintiff has no case since suit was not brought within two years. [36 U. S. Statutes at Large, p. 291, chapter 143; Atlantic Coast Line Railroad v. Burnette, 239 U. S. 199.] The vital question, therefore, is whether or not the facts of the case bring it under the Federal Act?

The defendant Terminal Company owned the old Union Depot in Kansas City, Missouri, together with a line of railroad around said city with tracks leading to said Union Depot and connecting with practically all of the many trunk line railroads entering Kansas City. Nearly all passenger trains entering and leaving Kansas City used the said depot and the Terminal railway tracks. In fact all the trains, freight as well as passenger, of nearly all the great trunk lines entering Kansas City used the tracks of, and the terminal facilities afforded by, the said Terminal company. The defendant Milwaukee Railway Company was one of these trunk lines, and, under a contract with the Terminal Company, operated its trains over the latter's said tracks. Among them was a Milwaukee passenger train No. 8 which ran from Kansas City to Chicago via Ottumwa, Iowa; and Milwaukee Engine No. 3106 was the regular engine which pulled this train out of Kansas City on its interstate journcy. According to plaintiff's evidence it was the regular engine assigned to that train provided it met with no accident, and the record does not show that it was used in any other

service. Preparatory to taking train No. 8 out on its journey, said engine No. 3106 regularly left the Milwaukee roundhouse near the eastern limits of Kansas City every morning about 7:40, stopped at the yard of the Milwaukee company, known as the Broadway yard, where it coupled on to the passenger coaches making up said train No. 8, and then proceeded immediately to the Union Depot where the train received its passengers and then left on its journey. In thus going from the roundhouse to the Union Depot and thence out of the city, the Terminal company's tracks were used.

Plaintiff was the General Yard Master of the Terminal Company, and his duties included the supervisory charge of the operation of all trains using the Terminal company's tracks, the direction of affairs following wrecks and accidents thereon, and included the clearing of the tracks so that general traffic would not be hindered or obstructed.

On the day of plaintiff's injury, while said Milwaukee train No. 8 was proceeding from the Broadway yard to the Union Depot, its engine No. 3106 was derailed about one-and-one-half miles from said depot. Plaintiff, as General Yard Master of the Terminal Company, was notified and immediately took charge of the situation. The Milwaukee had sent another engine which had arrived on the scene when plaintiff reached the spot. Plaintiff ordered the train to be uncoupled from the derailed engine and had it attached to the other engine so as to take the train out of the way and on to the depot for its passangers. By direction of the Milwaukee Yardmaster who was present at first, but who shortly after went away, the crew on the derailed engine traded places with the crew on the other engine and train No. 8 went on to the depot where, after securing its passengers, it left on its interstate trip.

In the meantime plaintiff was endeavoring to get the derailed engine back on the track and to clear the Terminal tracks so that general business could be dispatched thereover. According to plaintiff's testimony the derailed engine was tying up the Terminal's busi-

ness, and there were trains standing headed both ways waiting to get by the wreck.

After train No. 8 with its new engine had gone on to the depot, plaintiff had two engines endeavoring to pull the derailed engine on to the rails again, but, to do so, it was also necessary for the derailed engine to greatly exert its own power. When the signal was given for the concerted action of all three engines, the engineer on the derailed engine applied its power to the utmost, throwing the throttle wide open and causing a heavy exhaust of steam to be thrown out of the smoke stack, during which plaintiff got a cinder in his eye.

As the Terminal railway tracks and facilities were used and necessary in the transportation of persons and property by the "trunk line railroads" which entered Kansas City, the said defendant Terminal railroad was engaged in interstate commerce. [United States v. Union Stock Yard & Transfer Co., 226 U. S. 286; Ohio Railroad Commission v. Worthington, 225 U. S. 101; Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498; Trowbridge v. Kansas City, etc., R. Co., 192 Mo. App. 52; Interstate Commerce Act, as amended June 29, 1906, 34 Stats. at Large, p. 584, chapter 3591.] All railroads in this State are required to engage in interstate commerce, and it would seem that, even if the record were silent as to the nature of the commerce carried on by the "trunk line railroads entering Kansas City," still we might be able to take judicial knowledge that such trunk lines were engaged in interstate commerce. [State v. Missouri Pacific R. Co., 212 Mo. 658.] However, the record shows affirmatively that both defendants were railroad corporations and that they were engaged in interstate commerce, The Milwaukee is clearly an interstate railroad, and not only were cars transferred between it and the other trunk lines over the Terminal railway's tracks, but the Milwaukee interstate train No. 8 was operated over them daily, and its derailment, necessitating the work in which the injury was received, occurred on said Terminal

tracks. The two defendants were common carriers engaged in interstate commerce.

But the cause of action is not within the Employer's Liability Act unless the injury occurred "when the particular service in which the employee is engaged is a part of interstate commerce." [Illinois Central R. Co. v. Behrens, 233 U. S. 473.] Hence, the question arises was plaintiff engaged in interstate commerce at the time he was injured? Clearly he was as to the defendant Terminal Company because he was then engaged in *clearing the tracks* of said company in order that transportation thereover might not be hindered or impeded. The tracks being indispensable to the interstate commerce in which the defendant Terminal railroad was engaged, the clearing thereof was not a matter of indifference to such commerce, but was "so closely connected therewith as to be a part of it." [Pedersen v. Deleware, etc., R. Co., 229 U. S. 146, 151.] The authorities all hold that when the work being done is such that it directly affects or facilitates the carriage of interstate commerce, then the employee is engaged in such commerce. [New York Central R. Co. v. Winfield, 244 U. S. 147; 37 U. S. Sup. Ct. Rep. 546; Southern R. Co. v. Puckett, 37 U. S. Sup. Ct. Rep. 703; Seaboard Air Line R. Co. v. Koennecke, 239 U. S. 352; Hardwick v. Wabash R. Co., 181 Mo. App. 156; Christy v. Wabash R. Co., 191 S. W. 241.]

Again, train No. 8 was an interstate train, and it had started on its regular interstate trip, since the bringing of the train to the depot was the necessary preparatory step to the principal interstate movement. [North Carolina R. Co. v. Zachary, 232 U. S. 248; New York Central, etc., R. Co. v. Carr, 238 U. S. 260.] However, it will doubtless be said that the injury did not occur until *after* plaintiff had disconnected the train from its derailed engine and had sent said train on its way; and that, at the very time of the injury, plaintiff was merely engaged in the work of assisting the derailed engine to get back on the rails and return to its roundhouse. No doubt he was doing this, but such was not the main purpose nor the full result of

his work which, as stated, was to clear the tracks so as to allow trains which were waiting to pass the wreck. But, even in thus replacing the engine on the rails was he not assisting in the interstate commerce carried on by the Milwaukee? This engine was the one regularly assigned to this interstate daily train, and, so far as the record shows, it was not used in any but interstate service. Hence, in restoring it to the track so that it could be returned to the roundhouse and be there repaired, such work was upon an instrumentality of interstate commerce which was temporarily disabled but which would, upon restoration, at once go back into such service, and, therefore, plaintiff was engaged not only in the general interstate commerce carried on by the Terminal road but also in the particular interstate commerce which the Milwaukee was carrying on, or attempting to carry on, by means of this particular interstate engine and train. The fact that after said engine No. 3106 had started on the interstate journey it ran off the track and had to be returned to the roundhouse for repairs, does not change the fact that its reinstatement upon the rails in order to accomplish its return to the roundhouse was as much a part of the Milwaukee's interstate commerce as the bringing of the engine and train to the depot before its principal interstate movement. It was an incident connected with that interstate commerce necessarily arising by reason of the happening of the derailment during the progress of the trip. It was, therefore, a part of that work. [Erie R. Co. v. Winfield, 244 U. S. 170, 37 I. S. Sup. Ct. Rep. 556; Baltimore, etc., R. v. Darr, 204 Fed. 751; Law v. Illinois Central R. Co., 208 Fed. 869.]

But it is said plaintiff was an employee of the Terminal Company and not of the Milwaukee, and it is therefore, urged that the Employer's Liability Act has no application to the latter railroad. It is true, the liability created by the Act is a liability to the employee of the carrier and not to others. [Robinson v. Baltimore, etc., R. Co., 237 U. S. 84, 91; Chicago Rock Island, etc., R. Co. v. Bond, 240 U. S. 449.] But, under sections 3078

and 3079, Revised Statutes 1909, the lessor or licensor, Terminal Railway Company, is held liable for the negligent acts of the lessee or licensee, the Milwaukee Company. [Markey v. Missouri River R. Co., 185 Mo. 348; Dean v. Kansas City, etc., R. Co., 199 Mo. 386; Fleming v. Louisiana, etc., R. Co., 263 Mo. 180; Brown v. Louisiana, etc., R. Co., 256 Mo. 522.] And on the other hand the lessee or licensee, Milwaukee Company, is held liable for the negligent acts of the lessor or licensor, Terminal Company, at least for the negligent acts of the lessor or licensor in doing those things for the lessee or licensee which the latter would have to do if it owned the track. The applicable portion of section 3079 is as follows:

"Whenever any such railroad, street railway, or other railway company or corporation, or any receiver thereof, shall lease its road or track or any part thereof to any other company or corporation, or shall license or permit any other company or corporation, under any running agreement, to run cars, engines or rolling stock upon its road or track, in this State, the company or corporation so leasing its road, or such part thereof, to such other company or corporation, or so licensing or permitting the use of its road or track by such other company or corporation, shall remain liable for all acts, debts, claims, demands, judgments and liabilities of the lessee or licensee, or any sublessee or sublicensee, company or corporation, the same as if it (the lessor or licensor) operated the road, or such part thereof, itself; and such lessee or licensee shall likewise be held liable and may sue and be sued in all cases and for the same causes, and in the same manner, as if operating its own road."

The theory and purpose of such law is to prevent a railroad from evading the responsibility involved in the exercise of its corporate functions by delegating the operation of its road to another. Nor can a railroad avoid such responsibility by using the tracks of some other railroad. In other words, the effect of such law is to make the road that owns the track and the road

that uses it *joint operators* of the highway thus exist-
ing, so far the duties and responsibilities involved in
the exercise of railroad corporate functions are con-
cerned. It would seem to follow that if an employee
of the lessor or licensor was injured while engaged in
work which, at one and the same time, was not only a
part of the general interstate commerce of the lessor or
licensor but also of the particular interstate commerce
being carried on by the lessee or licensee, then such
injured person would, at the very time of his injury,
be engaged in the interstate commerce of both roads,
and would be an "employee" of both roads within
the meaning of the Interstate Commerce Act. [North
Carolina R. Co. v. Zachary Admr., 232 U. S. 248.] In
this case it was held that an employee of an interstate
less*ee* railroad, injured, while engaged in its interstate
commerce, by the negligence of such less*ee*, was an
"employee" of the less*or* railroad within the meaning
of the Federal Act, notwithstanding the fact that the
latter railroad lay wholly within the limits of a single
State. Since the State statute makes the two railway
companies, in the case at bar, joint operators of the
road, each responsible for the acts of the other in per-
forming their corporate functions as a railroad, at
least within the limits hereinabove defined, and makes
the equipment of the lessee the equipment of the lessor,
and the road-bed of the lessor the road-bed of the lessee,
and the employees of each, the employees of the other,
with respect at least to the performance of the common
functions of each railway company as a public carrier;
and since the Federal statute makes any common car-
rier engaged in interstate commerce liable for injury
to persons employed by it in such commerce, due to
negligent defects in, or negligent operation of, either
equipment or road, then it follows that the Federal
Act makes each, the lessor and lessee, liable for injuries
to the employees of the other, received while engaged
at the time in interstate commerce, whether caused by
defects in or the negligent operation of either the
lessor's road or the lessee's equipment. Consequently,

plaintiff is, by virtue of local law, to be regarded as the agent and employee of both roads, and as both were engaged in interstate commerce and plaintiff was, at the time of his injury, engaged in the interstate commerce of both roads, he will be regarded by the Federal law as an employee of both and his right of action for the injury is governed and controlled exclusively by the latter law.

The case of Robinson v. Baltimore and Ohio R. Co., 237 U. S. 84, is not contrary to the position we herein take, since in that case the plaintiff was a Pullman·porter and was not in any sense an agent or servant of the defendant railroad company in the performance of any of its functions as a common carrier, and the railroad had in no way made the Pullman company its agent to perform such functions. Hence, the porter could not be regarded as an employee of the railroad within the meaning of the Act. Nor can the case of Chicago, etc., R. Co. v. Wagner, 239 U. S. 452, be regarded as in point here. Because in that case plaintiff's cause of action was not based upon his status as an employee entitled to recover under the Liability Act. He did not sue his immediate employer, nor was any claim made that such immediate employer was, by virtue of local law, an agent of the defendant Alton railroad in the performance of its functions as a common carrier. In addition to all this, it was conceded and agreed upon at the trial "that the action was not governed by the Federal statute." [239 U. S. 456.]

We are, therefore, of the opinion that plaintiff's cause of action is, as to both defendants, governed and controlled by the Federal Act. It is well established that when such Act does apply it is supreme and excludes every other remedy. The subject of liability is so completely covered as to prevent recovery under any other law. [Second Employer's Liability cases, 223 U. S. 1; New York Central, etc., R. Co., v. James Winfield, 244 U. S. 147, 37 U. S. Sup. Ct. Rep. 546; St. Louis, etc., R. Co. v. Seale, 229 U. S. 156.]

It is urged that if defendants desired to claim the benefit of the Federal Act they should have offered evidence in support of such claim and submitted the questions thus involved to the jury by instructions. But it is not necessary for the defendants to offer evidence when, as here, the plaintiff's evidence discloses all that is necessary. [Roberts on Injuries to Interstate Employees, Sec. 51.] Even if the petition states a case under the State statute, yet if, upon the evidence, it appears that the case is controlled by the Federal Act and the defendant has duly excepted, the court must take notice of the exception. [St. Louis, etc., R. Co. v. Seale, 229 U. S. 156.]

The judgment of the trial court is affirmed. All concur.