J. F. SWEANY, RESPONDENT, v. WABASH RAILWAY CO., APPELLANT.
—80 S. W. (2d) 216.

Kansas City Court of Appeals. February 18, 1935.

394

*M. E. Pangburn, H. B. Pyle* and *Sherman & Sherman* for respondent,

*Dudley & Brandom* and *Homer Hall* for appellant.

SHAIN, P. J.—In this action the plaintiff, an employee of the defendant, seeks to recover damages against the defendant for injuries that plaintiff alleges he received while in the employ of defendant, as a section laborer.

The injuries of which complained are alleged as resulting from fumes which came from the railway ties that had been treated with creosote. It appears that the defendant, a railway company, shipped the creosoted ties in a box car and the ties are alleged as for use on the main line of the defendant railway company, over which trains were operated through Missouri, into and through Iowa and to Omaha, Nebraska, and various points in other states.

The plaintiff alleges that he was ordered into the box car where the ties were situate; that the weather was extremely hot and that the car was full of the fumes, which came from the creosote treated ties. The plaintiff further alleges that said fumes were very harmful to the health of those coming into contact therewith. Plaintiff alleges ignorance of knowledge, as to the alleged harmful effects of these fumes, but alleges that the defendant had, or should have had, such knowledge.

The plaintiff alleges that the defendant, with knowledge of the harmful effects of the fumes, carelessly and negligently placed him to work in an unsafe place; carelessly and negligently failed to warn him of the danger of working in the atmosphere in said box car, and carelessly and negligently failed to give him instructions as to the handling of said ties.

The plaintiff alleges good health, prior to the date of handling the ties, and alleges capability of earning power, prior to said work, of $75 per month.

The fourth paragraph of plaintiff's petition is as follows:

"Plaintiff further states that because of being compelled to work in said box car with said creosoted ties that the fumes and exudations from said ties permeated plaintiff's nostrils and lungs and that the fumes and exudations were highly poisonous and as a result of inhaling said fumes from said creosoted ties plaintiff was made ill and his whole system became deranged and disordered and since said date plaintiff has been unable to follow his usual avocation in life and unable to earn any wages whatsoever."

The plaintiff further described his ailments arising from said fumes as causing the lining of his nostrils, bronchial tubes and all of his respiratory tract to become inflamed and sore, plaintiff became afflicted with high blood pressure and rapid pulse, the blood was caused to become low in hemoglobin, liver became congested, kidneys diseased, urine acid, heart dilated and his whole nervous system diseased. The plaintiff further plead external symptoms of injury and plead all as the direct result of the aforesaid negligence of the defendant. The plaintiff further alleges incurring expense for medical attendance and medicine and plead pain and mental anguish and alleges his injuries as permanent.

The defendant interposed a demurrer to the plaintiff's petition, which was overruled by the trial court, and the defendant filed answer as follows:

"The defendant for answer to the petition states that it admits that it is a corporation duly organized and existing according to law and that it denies each and every other allegation in the petition.

"The defendant for further answer states that if the plaintiff received any injury at the time and place or in the manner alleged in the petition, which defendant denies, such injury was not received under any circumstances, condition or state of facts which would create or give rise to any right of action in this court against the defendant, and that whatever right might have been created or arisen, if any, was under the Workmen's Compensation Law of the State of Missouri, and that the plaintiff has no right to prosecute this action against the defendant.

"Defendant further alleges that whatever injury, if any, plaintiff received to his face, neck, breast, body, arm, legs or eyes was the result of his own carelessness and negligence in failing to protect himself from the effect of such creosote and unnecessarily causing and permitting the same to come in contract with such parts of body and his eyes, and not because of any fault or neglect of the defendant.

"The defendant for further answer states that the defendant was an experienced worker in the handling of ties which had been treated with creosote and knew the risk of injury therefrom, and that the risk of injury therefrom, if any there was, which defendant denies, was open and obvious to a man of ordinary prudence, and that the plain-

tiff assumed the danger and risk of injury from handling such ties, if any there was, which defendant denies, and the plaintiff is therefore not entitled to recover.

"Wherefore, having fully answered the defendant asks to be discharged with costs."

The issues were tried by jury resulting in a verdict in favor of the plaintiff in the sum of $5000. Judgment was entered in accordance with the verdict and the defendant has appealed.

## OPINION.

The respondent was plaintiff below and the appellant was defendant below and in our opinion we designate parties as they appeared in the trial court.

The defendant under "Assignment of Errors" presents under twenty heads and follows by "Points and Authorities" under fourteen heads.

The defendant, under its assignment of errors, presents many conclusions of error without assignment of any reason and, under points and authorities, presents many matters *arguendo* without predication of error.

Gathered from defendant's specification, wherein reasons are assigned and from presentations *arguendo,* we gather the substance of claims of error to be: First, that the jurisdiction of the trial court is questioned in that the plaintiff has failed to plead a cause of action under the Federal Employers' Liability Act, under which act the cause was tried. Second, that the pleading presented no cause of action for which the defendant was liable. Third, that defendant's instruction, in the nature of a demurrer, should have been given by reason of failure of evidence to support the verdict. Fourth, that the court committed error in admitting testimony of medical witnesses based upon statements made by the plaintiff, evidence as to properties and effects of creosote and evidence of plaintiff's wife to the effect that her husband had never shown any signs of tuberculosis. Fifth, that the court erred in excluding testimony of employees working in treating plants, to the effect of not being injured by inhaling creosote fumes; in excluding evidence as to the manner in which ties were to be used; in excluding evidence that the plaintiff made no complaint to his foreman and in excluding testimony of the track supervisor that he had never known of men complaining of being injured by inhaling creosote fumes. Sixth, that the court erred in overruling the defendant's objections to hypothetical questions asked of plaintiff's medical witnesses; objection predicated on want of qualification of witness and in overruling the defendant's objections to questions asked the plaintiff's medical witnesess concerning the statements of plaintiff. Seventh, that the court erred by admitting, in rebuttal, testimony of employees working in a

treating plant at Texarkana twelve years before, to the effect that they wore masks. Eighth, that the court erred in overruling the defendant's motion to discharge the jury because of the inflammatory and prejudicial argument of counsel for the plaintiff. Ninth, the defendant presents error in giving and refusing of instructions but does not specify wherein there was error, except as to plaintiff's instruction one, wherein it is claimed that the same is broader than the pleadings. Tenth, the defendant further claims the verdict excessive in that there is no evidence as to plaintiff's expenditures for medicine or medical attention. Eleventh, further defendant predicates error in refusing its Instruction D-4, which presented defense of non-liability.

As to the plaintiff's first contention, we conclude that by both the pleadings and the evidence this case comes squarely under the Federal Employers' Liability Act and that the rights and obligations of the parties hereto are to be determined by the provisions of that act. There is ample evidence from which it is shown that the ties were to be used on a main line of road engaged in interstate transportation. Such, we conclude, is sufficient. [Spaw v. K. C. Terminal Ry. Co., 198 Mo. App. 552, 201 S. W. 927; Second Employer's Liability Cases, 223 U. S. 1; New York Central, etc., R. Co. v. James Winfield, 244 U. S. 147, 37 U. S. Sup. Ct. Rep. 546; St. Louis, etc., R. Co. v. Seale, 229 U. S. 156.]

The gist of the plaintiff's alleged cause of action is based upon the principle that it is the duty of a master to furnish his employee a safe place to work.

The defendant, refusing to stand on its demurrer to plaintiff's petition, joined issue by its answer. This situation of fact eliminates questions of demurrers if there be a cause of action stated and supported by credible testimony.

The serious question, around which the presentation on the part of the defendant revolves, is as to whether or not the alleged negligence and the proof of facts of alleged negligence presents a cause of action against the defendant.

The plaintiff's cause of action is based upon assertion of harmful effects of creosote alleged as arising from the touch and from the inhaling of fumes. The defendant urges that the plaintiff, from his previous experience, had knoweldge of the effect of handling creosoted ties and therefore the duty was not upon the defendant to warn. We conclude that, as to the effect on body tissues arising from touch, the position of defendant is well taken. However, as to the harmful effects from fumes, if so, the defendant's position is not tenable. In fact, defendant is claiming that the fumes of creosote do not cause such ill effects on the health, as is claimed by the plaintiff.

We conclude that, if there be any liability on the defendant, the same arises from the fact that creosote fumes will and did penetrate

nostrils, and lungs and thereby poison the system and produce the alleged changed condition of health as plead. If it be determined that such fumes, under the working conditions shown, produced such results then, of course, the fact of an unsafe place to work is established and, if so, then it must be determined as to whether the evidence justifies the conclusion that defendant knew, or by the exercise of ordinary care could have known, of said effects of said fumes and warned the plaintiff of the danger or by other means averted the danger, if so.

As to the question of effects of inhaling creosote fumes, both sides offer medical experts. In the examination of the medical men on both sides, some of the hypothetical questions appear to have verbiage that was somewhat objectionable and there are some conclusions reached and stated that, from a single question asked, might not be of much probative force, still from a study of the whole, when considered from the standpoint of mode of inquiry used by each side, we conclude that no reversible error is presented as to same.

The sum and substance of the whole medical testimony is that the symptoms of the plaintiff's alleged condition could be produced from a multitude of causes. The conclusion reached by medical expert testimony, on behalf of the plaintiff, being that the plaintiff's condition of health could be produced from creosote fumes. On the other hand, the conclusion reached by defendant's medical expert is that the plaintiff's condition of health could not have been caused from creosote fumes.

Complaint is made that defendant's medical expert was restricted in his testimony by not being permitted to base his judgment on his general observations as to his experiences with employees in general, who had worked in creosote fumes. When the whole testimony be reviewed, we conclude that the doctors reached divergent conclusions based on facts that had come from every sources that had been to them available.

The remarkable fact of the whole medical testimony is that none of the medical men had ever before treated or had a patient suffering from the harmful effects of creosote fumes, such as was evidenced by the plaintiff's condition.

While the medical testimony is unsatisfactory, still it presents competent testimony and from this testimony we must conclude that there is presented an issue of fact as to the question of the effects of creosote fumes.

As to the issue of fact stated above, we are bound by the verdict of the jury and for the purposes of this case must proceed on the theory that creosote fumes are injurious in the way charged and can produce the results alleged.

The above conclusion being reached, the question as to failure to warn the plaintiff of the danger of working in creosote fumes presents for consideration.

The rule governing in proceedings under the Federal Employers' Liability Act is well expressed in Martin v. Wabash Ry. Co., 30 S. W. (2d) 735, 325 Mo. 1107. At pages 741 and 742 of 30 S. W. (2d), the following language is found, to-wit:

"As the instant action is brought under the Federal Employers' Liability Act, the rights and obligations of the parties are to be determined by the provisions of that act, and by the applicable principles of the common law as interpreted and applied in the Federal courts. [Second Employers' Liability Cases, 223 U. S. 1, 55, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.]" (Other citations follow.)

"The Federal Employers' Liability Act permits a recovery upon the basis of negligence only, and therefore the burden is on plaintiff to adduce reasonable and substantial evidence to show a breach of duty owed by defendant to him in respect of the place of his injury, and that, in whole or in part, his injuries resulted proximately and directly therefrom. [Delaware, L. & W. Railroad Co. v. Koske, 279 U. S. 7, 11, 49 S. Ct. 202, 73 L. Ed. 578.]" (Other citations follow.)

"In cases arising under the Federal Employers' Liability Act, the Federal courts hold that an employee, in entering upon a contract of employment, assumes all the risks and dangers ordinarily incident to his employment, and also the extraordinary risks caused by the employer's negligence which are obvious and fully known to the employee and appreciated by him, or so plainly observable that he must be presumed to know them. [Boldt v. Pennsylvania Railroad Co., 245 U. S. 441, 445, 38 S. Ct. 139, 62 L. Ed. 385.]" (Other citations follow.)

We have carefully searched for a Missouri authority, wherein creosote fumes are involved, and find none. We find, however, that creosote fumes cases are not unknown to some of our sister states and to our Federal courts.

In Pinkley v. Chicago & Eastern Illinois R. Co., 246 Ill. 370, practically the same issue as is presented in the case at bar was before that court.

In the Pinkley case, supra, the plaintiff in obedience to orders had worked at removing creosoted timbers from a car and claimed injuries as arising from creosote fumes. The Illinois court held there was no liability on the employer. In the course of the opinion, the court quoting from and commenting of the opinion in Braun v. Craven, 173 Ill. 401, quotes and comments as follows:

" 'The principle is, damages which are recoverable for negligence must be such as are the natural and reasonable results of defendant's acts, and the consequences must be such as in the ordinary course of things would flow from the acts and could be reasonably anticipated as a result thereof. Proximate damages are such as are the

ordinary and natural results of the omission or commission of acts of negligence and such as are usual and might have been reasonably expected. Remote damages are such as are the unusual and unexpected result not reasonably to be anticipated from an accidental or unusual combination of circumstances—a result beyond and over which the negligent party has no control. The law regards only the direct and proximate results of negligent acts as creating a liability against a defendant.' There is in this record no evidence tending to show that appellant could reasonably have been expected to anticipate that appellee would be seriously or permanently injured in obeying the order to assist in unloading the piling from the car, and under the principle announced in the foregoing cases decided by this court the appellant cannot be held liable for those injuries.''

In Green v. Standard Wholesale Phosphate & Acid Works, 29 Fed. (2d) 746, the Federal court cites with approval the Pinkley case, supra. At page 749 of the above case, the court, in commenting on the Pinkey case, says:

''In the first case an employee was injured in handling timber that had been treated with creosote. It was known to employer and employee alike that there was some risk of blistering the skin in such an operation; but the plaintiff was the first person to sustain serious and permanent injury. No one knew that such a result was likely to happen, and the defendant was released from liability.''

In Pecos & N. T. Ry. Co. v. Collins, 173 S. W. 250 (Court of Civil Appeals of Texas), is found a case practically on all fours with the case at bar. In the course of the opinion, l. c. 256, it is said:

''(6) The important question, however, in this case is: Assuming that creosote is a poison, and so recognized by the chemist or medical world, but, as noted by them, all the known effect of such poison, when applied to the skin, is a burning sensation compared to a sunburn, and never known to the profession or treated by standard authorities as producing constitutional disorders, or systemic poison, whether an employer be charged with negligence in failing to warn of such danger when he did not know and could not know that a constitutional disorder would result from such a use; in other words, was such an injury incidental to the wrong done, and was it such as may have reasonably been supposed to have entered into the contemplation of the appellant?''

The question of harmful effect of creosote to the delicate bodily structure was before this court in Cunningham v. Railroad, 156 Mo. App. 617. In the Cunningham case, the plaintiff, while handling ties wet with creosote solution, was using gloves and he wiped his eye with his damp glove and received injured thereto. On the theory that the employee was shown ignorant, as to the substance in the tie treatment and that the employer had knowledge, this court

held it was the duty of the employer to have warned and this court held the employer liable for failure to warn. However, as hereinbefore indicated, the evidence in the case at bar, we conclude, establishes that the plaintiff had knowledge as to the danger of contact of creosote to bodily structure, which fact eliminates that feature from the case at bar and presents as to the danger not of touch but to danger from fumes.

In a careful examination of all the cases that we have been able to find involving the alleged injury from fumes of creosote, we have not found a case wherein is adjudicated the question as to whether the fumes of creosote will produce the effects of which complained. It appears that the conclusion reached in all of these cases is based upon the assumption that no such injuries, as are complained, could have been concluded reasonably to have entered into the contemplation of the employer.

As to the question presented herein, we conclude that application of the principle, "When the reason of a rule ceases the rule ceases," has application.

Courts, in the repeated holding that the harmful effects of creosote fumes, if harmful, is by reason of novelty excluded from contemplation, cannot be expected to so hold after repeated cases present experience from which employers may become so informed as to have the question of harmful effects in reasonable contemplation.

Time seems to be developing creosote fumes manifestation into an occupational disease. Occupational disease is variously defined. The sum and substance of the definitions would seem to indicate that the appellation is used to designate all of those physical ills arising out of employment, for which the medical profession can find no better name.

We conclude that the time has come when, as to creosote fumes arising under the circumstances as shown by the evidence in this case, it should be declared that an issue of fact is presented on the question of whether or not the effect of the fumes may reasonably be presumed to enter into the contemplation of the employer.

Having reached such a conclusion, we hold that it was reversible error to refuse the defendant's Instruction D-4, which instruction reads as follows:

"The court instructs the jury that although you may believe from the evidence that the plaintiff suffered injury from inhaling fumes from the creosoted ties described in the evidence, yet if you further find from the evidence that injury from such cause was so unusual and extraordinary that the defendant did not know or could not have reasonably anticipated that such result might follow the unloading of such ties, then the defendant cannot be held responsible for such results and the plaintiff cannot recover and your verdict must be for the defendant."

As this case will have to be retried, we state our conclusion to be that, in view of the question submitted by Instruction D-4, it is error to exclude evidence as to general experiences of those who have worked in creosote fumes or are shown to have had experiences touching such working conditions.

As to the plaintiff's instruction one (I), we conclude that, if given in connection with D-4, no error is presented.

We conclude that the pleadings and evidence presents issues of fact for the jury and therefore the defendant's demurrer directing a verdict was properly refused.

We conclude further that the remarks of the plaintiff's counsel in the argument has objectionable features that should be avoided in a retrial of the case. The reference to wife and daughter was objectionable and comparison of the plaintiff's condition with that of members of the jury should not be permitted.

The judgment is reversed and cause remanded. All concur.