Emery **FISHER**, Plaintiff (Appellant),

v.

Leo Eugene **WILLIAMS**, Defendant (Respondent).

No. 46989.

Supreme Court of Missouri,

Division No. 2.

July 13, 1959.

Rehearing Denied Sept. 14, 1959.

Schomburg & Marshall, Richard M. Marshall, Glen C. Schomburg, Northcutt Coil, St. Louis, for plaintiff (appellant).

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St. Louis, for respondent.

BARRETT, Commissioner.

Shortly after five o'clock on the afternoon of August 19, 1954, plaintiff, Emery Fisher, instead of walking to a regular pedestrian crosswalk or to a light-controlled street intersection, attempted to walk across Gravois in the middle of the block. There are six traffic lanes on Gravois, one on each side of the street for parked vehicles and four lanes, two on each side of a white line, for moving vehicles. When Fisher attempted to cross the street from west to east the red stop light was on at Delor and cars were stopped or parked three abreast in the west traffic lanes. Fisher walked between the stopped automobiles, "zigzagged" through them he said, at a brisk walk, other witnesses said that he ran or trotted between the stopped vehicles. As he got to the white center line of the street, perhaps a step or two past the white line, he saw "something coming on the right" and he "stepped backward approximately two steps * * * tried to pull back to the white center line," and was struck by the defendant's northbound automobile as it traveled in the third or inside traffic lane. In this action to recover $75,000 damages for his resulting personal injuries a jury returned a verdict in favor of the defendant, Williams, and the plaintiff, Fisher, has appealed from the judgment entered upon the verdict.

Williams claims that the evidence adduced by Fisher was insufficient to support the inference and finding of negligence under the humanitarian doctrine, and that therefore the judgment should be affirmed. But inasmuch as we have come to the conclusion that Fisher is not entitled to a new trial for either of the ten reasons assigned here it is not necessary to determine whether his evidence was sufficient to support a finding of Williams' negligence and liability within the meaning of the humanitarian doctrine. And conversely in this connection Fisher claims that the trial court erred in refusing his motion for a directed verdict for the reasons that under his evidence and the defendant's evidence and admissions his case was established and "removed the issues of liability from the province of the jury." He analyzes the evidence in detail and urges that it made "a strong case" of liability under the humanitarian doctrine; he elaborately develops eight separate points which he says conclusively establish his case and, "Therefore, when, as here, plaintiff made a submissible case through his own and his witnesses' testimony and the defendant 'by his own evidence also establishes plaintiff's claim,' (Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282), the liability issue is resolved and as far as liability is concerned there is nothing further for the jury to decide."

In making his contention the appellant has not carefully considered the Rogers case or precisely noted what was involved in the appeal and what the opinion could and in point of fact did decide. The opinion employs some of the language ascribed to it, but, in the first place, it was adopted by the court en banc by one concurring judge, four concurrences in result and two dissents. In the second place the opinion notes the general rule under the jury system, and the fact that it is only in "unusual situations" that verdicts may be directed in favor of parties upon whom the burden of proof and the burden of persuasion rests; as, for example, where the defendant by his pleadings or by counsel in open court expressly admits the

plaintiff's claim. Research has revealed but a single instance in which a trial court appropriately and in fact directed a verdict in favor of a plaintiff in an ordinary negligence case and that case, like the Rogers case, a collision between two trains, was submitted upon a written "stipulation." But in the third place, in the Rogers case, the court was considering whether an instruction in a Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) case which in effect directed a verdict was erroneous. This fact and point is illustrated by a case in which the court was considering a defendant's instruction which in effect directed a verdict, Hampe v. Versen, 224 Mo.App. 1144, 32 S.W.2d 793. But in the fourth place, whatever the language in the Rogers case and despite the instruction, the case was in point of fact submitted to the jury. And finally, in that F.E.L.A. case, there was not and could not be much dispute or doubt that some of the defendant railroad's employees were negligent when they ran a train through signals into the rear of another train. In this case Fisher's right to recover and Williams' liability depended solely on oral evidence, its weight and credibility, and the drawing of delicate and doubtful inferences, there were no conclusive admissions by Williams or his counsel and he was entitled in any event to have the jury pass upon the credibility of the plaintiff's evidence "even though he should offer no evidence himself." Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559; Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570. There was in this case as there was in Nichols v. Bresnahan, a case in which a pedestrian crossing Natural Bridge Road was struck by an automobile, conflicting evidence in support of conflicting theories as to the precise cause of the accident and injury and upon this record and in these circumstances the plaintiff was certainly not entitled to a directed verdict.

Somewhat in connection with the submission of the merits of his case, the plaintiff urges that he is entitled to a new trial because of the court's giving instructions three and four. Instruction three is a short one-sentence instruction abstractly defining the term "position of imminent peril." Instruction four, in substance, told the jury that if at the time the plaintiff entered a position of imminent peril it was "then too late for the defendant to have prevented the accident by stopping, slackening his speed, changing the course of his automobile, or by sounding a signal or warning, then, and in such event, plaintiff is not entitled to recover, * * *." It is tacitly conceded that these instructions are correct abstract statements of the law; it is urged, however, that they are prejudicially erroneous in that they do not include the element of "plaintiff's discoverability." It is said, in effect, that they abstractly include and cover "discovered peril" but ignore the significant element of "discoverable peril." By reason of "the singular theory upon which the plaintiff based his case" (the humanitarian doctrine), it is urged that the defendant was bound in any hypothesis to factually as well as abstractly include and cover the element of discoverable peril.

■ Actually these instructions were not in point of fact, either abstractly or factually, true converse instructions, they did not purport in reverse order to cover the plaintiff's case as a whole as was the fact with the instructions in Teague v. Plaza Express Co., 356 Mo. 1186, 205 S.W.2d 563. For a truly converse instruction concerning the subject of discoverable peril, see Johnson v. Hurck Delivery Service, Inc., 353 Mo. 1207, 187 S.W.2d 200. Furthermore, as was pointed out, the trial court in the Teague case sustained the plaintiff's motion for a new trial, while in this case the court considered the alleged prejudicial effect of the instructions and overruled the plaintiff's motion. In Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961, the instruction complained of plainly covered, abstractly and hypothetically, "discovered peril" and since in that case the sharp and determinative issue was discoverable peril (whether the defendant could have seen the plaintiff

as she walked from behind a parked automobile in the middle of the block across Grand Avenue), it was held that the instruction was erroneous and compelled the granting of a new trial because it did not, either factually or abstractly, cover the element of discoverable peril. But these instructions do not, either expressly or tacitly, specifically deal with either "discovered" or "discoverable" peril, the words are not employed and the hypothetical facts do not purport to cover that phase of the humanitarian doctrine. They, particularly instruction four, deal only with the defendant's ability to avoid hitting the plaintiff after his peril arose, whether it was discovered or discoverable, and as that subject was clearly defined and covered in the plaintiff's instructions, consequently these instructions could not have confused the jury. Instruction three in defining "imminent peril" is identical with the instructions in Wallace v. St. Joseph Ry., L., H. & P. Co., 336 Mo. 282, 77 S.W.2d 1011, and Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, and in those cases it was held that the instructions were not confusing or misleading and did not unduly limit the danger zone. Instruction four is a rescript of the instructions complained of in Welch v. McNeely, Mo., 269 S.W.2d 871, and Fantin v. L. W. Hays, Inc., Mo., 242 S.W.2d 509, and in those cases it was pointed out that the instructions did not, either in express terms or by implication, eliminate discoverable peril. As to that subject the instructions assumed the applicability of the plaintiff's emphatic hypothesis "that the defendant saw, or in the exercise of the highest degree of care could have seen plaintiff in such position of imminent peril."

Also in connection with the submission of his case on its merits the plaintiff claims that the court erred in permitting defendant's counsel "to inject the issue of contributory negligence into the case when the plaintiff proceeded solely upon (the) humanitarian doctrine." It is urged that the error consisted in permitting defendant's

counsel to argue contributory negligence "on voir dire and opening statement," in granting defendant leave to amend his answer so as to include the plea, and, finally, in permitting counsel to refer to the subject in his closing argument. Related to this point is his claim that the court erred in permitting defense counsel "to misrepresent the humanitarian doctrine to the jury," especially when counsel likened plaintiff and his zigzagging through the traffic across Gravois to a drunken man, and in stating to the jury that plaintiff by relying on the humanitarian doctrine admitted that he was himself negligent. It is said that the argument was error because there was no evidence of intoxication and, in addition, it injected contributory negligence into the plaintiff's "strictly humanitarian case."

The one thing that probably all lawyers confidently know about the humanitarian doctrine is that liability attaches notwithstanding the plaintiff's contributory negligence, and that it is improper for a defendant to directly inject the issue of antecedent negligence into a case submitted solely on the hypothesis of the doctrine, either in his instructions or in his argument. Stout v. Kansas City Public Service Co., Mo.App., 17 S.W.2d 363, 368; Powell v. Brosnahan, 232 Mo.App. 1161, 115 S.W.2d 140. The difficulty with the appellant's argument in regard to all these matters is that his forceful statement of them in his points here is not so plainly and forcefully supported when viewed in the context of the record. It may well be that the trial court should not have granted the defendant leave to amend his answer so as to include the plea of contributory negligence (Phillips v. Prugh, Mo.App., 255 S.W.2d 84, 87), but the appellant does not claim that the jury was informed of the fact of the amendment in any manner and, obviously, they could not have been influenced by a fact of which they had no knowledge. Examination of the record on voir dire does not reveal any reference by counsel to contributory negligence at that point in the trial; the appellant points to

pages seven and eight of the record where a juror interposed in evident astonishment and asked if he understood correctly that Mr. Fisher was attempting to cross Garvois in the middle of the block and when informed that he was said that he "would be prejudiced in that case," and the juror was then excused from jury duty. At another point on voir dire, page seventeen of the record, counsel did tell the jury that Mr. Fisher had moved between three rows of standing automobiles and then ran or moved into the path of defendant's car, but there was no objection to the statement and of course the plaintiff himself testified to and of necessity relied upon these very facts as establishing his case. There was one direct reference by defense counsel in his opening statement to Mr. Fisher's contributory negligence and the assertion that he was going to ask a verdict in favor of Mr. Williams "on that theory, that Mr. Fisher was guilty of negligence which bars recovery." Plaintiff's counsel said, "Your Honor, I request the jury be instructed to disregard the last sentence of Mr. Cleary's as to the law, because I don't think that is the law as it will be given by the Court later on." The court. overruled the objection, "At this time, anyway," and there was no further specific objection or request for action on the part of the court.

In his argument to the jury defense counsel made no direct reference to Fisher's contributory negligence; he did talk about his "running" between the automobiles and the fact that he was attempting to cross the street in the middle of the block, but, in addition to the inherency of these facts in even the plaintiff's basic theory of the case, plaintiff's counsel made no objection whatever to this phase of the argument and, of course, is in no position to object to it now. 88 C.J.S. Trial § 196, p. 382. In the course of his argument counsel pointed to certain facts and was arguing that the defendant had sustained his burden and that upon those facts there

was no liability on his part under the humanitarian doctrine. He then attempted to explain the doctrine and its origin and in part said, "We have carried that burden by bringing in as many as we could to show you the man was not doing what he said he was doing, that he did not stand there and he did not look and he now asks you to invoke what we call the humanitarian doctrine, which came over from England years ago, that if you see a man intoxicated in the street, staggering across the street, you see a child out there—." Plaintiff's counsel, instead of specifically objecting to the court, interposed and said, "Your Honor, this has nothing to do with the case. The humanitarian doctrine does apply, but it has nothing to do with intoxication." The court said, "Overruled," and there was no other or further objection or request for appropriate action on the part of the court. Counsel did not accuse the plaintiff of intoxication, he was attempting to illustrate and illuminate the humanitarian doctrine and it is not necessary to consider the soundness of his exposition and whether it amounted to a "misrepresentation"; the argument was not wholly outside the issues and it was not manifestly inflammatory. Redick v. M. B. Thomas Auto Sales, 364 Mo. 1174, 273 S.W. 2d 228. But, in connection with all these contentions, the significant fact is that the trial court did not submit contributory negligence to the jury's consideration in any manner; in this trial there were but three instructions concerning the humanitarian doctrine, the plaintiff's main instruction and instructions three and four and no other instructions delimiting or expounding the doctrine were requested by either of the parties. In the circumstances of this and similar cases it may be unrealistic to suppose that a jury would not and did not consider the plaintiffs' antecedent negligence, nevertheless, plaintiff's main instruction submitting his case and the hypothesis of the doctrine concluded in this language: "and you are further instructed that that is the law and that is true under the cir-

cumstances and conditions above set forth, if you so find them, even though you should also find and believe from the evidence that some act or omission of plaintiff directly contributed to his coming into and being in the aforesaid position of imminent peril." And again, the trial court considered counsel's argument and all these matters and whether they demanded the granting of a new trial and it may not be said upon this record that the court abused its discretion. Collins v. Cowger, Mo., 283 S.W.2d 554; Silverstein v. St. Louis Public Service Co., Mo., 295 S.W.2d 37, 42.

And in connection with the proof of his case it is not necessary to consider the substantive merit of the claim that the trial court erred in precluding plaintiff's counsel from cross-examining the defendant Williams and Officer Nix as to the existence and their knowledge of a custom of pedestrians crossing Gravois in the middle of the block. After the court sustained an objection to the question to Williams, counsel started to make but did not complete an offer of proof; instead of making an offer of proof counsel and the court engaged in a colloquy as to what the witness had said or would say—the court stating that as he understood the witness would not testify to any such custom. When asked whether there was a custom for people to cross Gravois in the middle of the block Officer Nix said, "Well, they do it." Counsel insisted on attempting to prove such a custom but after the court sustained an objection there was again no offer of proof. In this posture, there being no full and complete offers of proof of such a general custom or of knowledge of such a custom on the part of the witnesses, the plaintiff is in no position to complain of the court's limiting his cross-examination in regard to this particular subject. 9C Blashfield, Cyclopedia of Automobile Law, Sec. 6186.5, pp. 284–289; 88 C.J.S. Trial § 80, p. 183; Robison v. Chicago Great Western R. Co., Mo.App., 66 S.W.2d 180, 191; Grimes v. American League Baseball Co., Mo.App., 78 S.W.2d 520, 525.

Aside from the plaintiff himself, the only person to give evidence on his behalf was witness Powers who on August 19, 1954, had stopped his automobile in the center lane and was waiting for the stop sign at Delor to change. Mr. Powers testified in detail to Mr. Fisher's movements and how he was hit. Upon his cross-examination it developed that on August 25, 1954, he had given a written statement to a lawyer representing the defendant. He was cross-examined at length concerning the statement and in some rather material respects there was a conflict in his testimony and the statement and finally, over objection, defense counsel was permitted to read the statement to the jury. It is now contended that the court erred in permitting counsel to read the entire statement because it was hearsay in character, it was not the statement of a "deposed witness," and the witness was not a party to the litigation. The gist of the argument seems to be that since counsel in his cross-examination had previously employed the statement to impeach the witness "the defendant had exhausted its evidentiary value" and thereafter it was improper for the court to permit "the defendant to make use of the statement a second time as substantive evidence." The testimony of the witness and the conflicts in his evidence and his statement have not been detailed and it is not necessary to note them or to consider the refinements of the argument made here. It is sufficient for the purposes of this appeal to say that the statement did impair the value of Powers' testimony and admittedly, the foundation having been laid, was admissible in evidence because of its impeaching effect (58 Am.Jur., Sec. 767, p. 417; McCormick, Evidence, Secs. 33–39, pp. 62–82), even though it was not to be taken "as substantive and affirmative proof of the facts stated therein." Woelfle v. Connecticut Mutual Life Ins. Co., 234 Mo.App. 135, 150, 112 S.W.2d 865, 873; Pulitzer v. Chapman, 337 Mo. 298, 85 S.W.2d 400. But the appellant may not now complain of any affirmative probative force the jury may have

attributed to the impeaching statement because he did not offer or request an instruction delimiting its purpose and effect. Crabtree v. Kurn, 351 Mo. 628, 173 S.W.2d 851; Stremming v. Holekamp Lumber Co., Mo.App., 238 S.W.2d 31; Zamora v. Woodmen of the World Life Ins. Soc., Mo.App., 157 S.W.2d 601.

■ As a part of his case the defendant read the deposition of witness Kremer and counsel for the plaintiff, of course, read the cross-examination of the witness. Thereafter defendant's trial counsel had himself sworn as a witness and attempted to testify concerning a signed statement that he had in his file from the deposed witness, the statement having been obtained by another lawyer in counsel's firm. It is objected upon this appeal that permitting counsel to testify improperly "injected the personality and dignity of defendant's counsel into the case" in violation of the canons of ethics (Supreme Court Rule 4.19, 42 V.A.M.S.), and that the court erred in permitting the testimony which related to an inadmissible matter. The exigencies of the situation did not demand his testimony (Burgdorf v. Keeven, 351 Mo. 1003, 174 S.W.2d 816) but it is not necessary to say whether counsel violated the canon, it is sufficient to note that counsel himself said, "I can tell the jury—I'll be sounding kind of silly asking myself questions." All that he was able to testify to was the fact that he had the statement in his file, its contents were not revealed, and the court sustained all objections to counsel's attempts to testify concerning the statement (Schipper v. Brashear Truck Co., Mo., 132 S.W.2d 993, 1000, 125 A.L.R. 674) and it may not be said that the court erred in refusing to also grant a new trial for the reasons assigned here. 97 C.J.S. Witnesses § 71, p. 465; State v. White, 339 Mo. 1019, 1024, 99 S.W.2d 72, 75; Menzi v. White, 360 Mo. 319, 228 S.W.2d 700, 17 L.R.A.2d 796.

■ Appellant's other assignments have to do with defense counsel's argument to the jury; it is urged that the court erred in permitting counsel to (a) refer "to defendant's family," (b) urge that "the jury should place itself in the shoes of the defendant," and (c) exhort the jury "to substitute their own notions of 'the highest degree of care' rather than the standard of care embodied in plaintiff's instruction No. One." The appellant, admittedly, made no objection whatever to the "highest degree of care" argument and therefore he invokes Rule 3.27: "Plain errors affecting substantial rights may be considered * * * on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, * * *." But appellant has overlooked the fact that resort may be had to the plain error rule in only those exceptional instances "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom." Supreme Court Rule 3.27. The rule may not be invoked to excuse mere failure to timely and properly object or to evade the primary responsibility of orderly presentation to the trial court in the first instance. Birmingham v. Coen, Mo., 320 S.W.2d 509, 510; Louis Steinbaum Real Estate Co. v. Maltz, Mo., 247 S.W.2d 652, 31 A.L.R.2d 1052. Likewise as to the "defendant's family," when counsel said, "I represent this man and feel I also represent the family, to an extent," there was no objection whatever. In his preliminary questions to Mr. Williams, identifying him, his age and where he worked, counsel asked, "Do you have a family?" Upon objection counsel withdrew the question (although appellant says that the defendant's wife and child sat in the courtroom during the trial), and there was no other or further objection or request for action on the part of the court and the appellant may not now complain of these two references or of the trial court's failure to grant a new trial because of them. Albert v. Metropolitan Life Ins. Co., Mo.App., 95 S.W.2d 343, 349; Blanford v. St. Louis Public Service Co., Mo., 266 S.W.2d 718, 722–723. It is not proper, of course, for counsel to call upon or in-

vite jurors "to put themselves in the place of the defendant." Powell v. Brosnahan, 232 Mo.App. loc. cit. 1173, 115 S.W.2d loc. cit. 147; Sweany v. Wabash Ry. Co., 229 Mo.App. 393, 80 S.W.2d 216. But in the argument complained of here there was not a plainly urgent and manifestly improper invitation to the jurors to compare or place themselves in the defendant's position. Redick v. M. B. Thomas Auto Sales, 364 Mo., loc. cit. 1192, 273 S.W.2d loc. cit. 238. Counsel did say, "Do you think if you were driving east in that lane—he had every right to be there, he was going to make a left turn, and that occurred, what do you think you could have done, and within a week afterwards you find yourself confronted with the possibility of litigation, four years later you find yourself in here listening to figures of $75,-000.00. What do you think your frame of mind is during that period of time?" As to this particular argument it may not be said that the trial court abused its discretion in overruling an objection to it or in declining to grant a new trial because of its impropriety; in the absence of a request to discharge the jury (Schroeder v. Wells, Mo., 298 S.W. 806, 815), it is certainly not so manifestly inflammatory and improper that this court should intervene and grant a new trial. Blanford v. St. Louis Public Service Co., supra; O'Neill v. Sherrill, Mo.App., 254 S.W.2d 263, 270.

For the reasons indicated, in all these assignments it does not appear that the trial court committed error "materially affecting the merits of the action" (V.A.M.S. § 512.160(2); therefore, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and STONE, Sp. J., concur.